Joe Venton **JENKINS**, Respondent,

v.

Evelyn Sue **JENKINS**, Appellant.

No. WD 74148.

Missouri Court of Appeals,
Western District.

June 19, 2012.

_____

THOMAS H. NEWTON, Presiding Judge.

Ms. Evelyn Sue Jenkins appeals the trial court's judgment of dissolution, contesting its property division. We find that the trial court erred in identifying Ms. Jenkins's wedding rings as marital property. We remand to the trial court to award the wedding rings to Ms. Jenkins as nonmarital property and to adjust the marital property division as the trial court finds is reasonable under the evidence. In all other respects, we affirm.

**Factual and Procedural Background**

The parties married in 2002 and separated in 2009. At the dissolution trial, Mr. Jenkins testified that at the time of marriage, he had assets approximating $235,000, including a 40–acre farm, while Ms. Jenkins had assets approximating $6,000 and debts over $20,000. Ms. Jenkins disputed the amount of her assets and debts.

After the marriage, Ms. Jenkins quit her job and moved to Mr. Jenkins's farm. She then worked part-time for about nineteen months, but because the position required her to spend two to four nights a week away from home, she resigned. Mr. Jenkins testified that he generated about eighty-five percent of the income during the marriage. Ms. Jenkins testified that her earnings, social security, and unemployment benefits all went into their marital accounts.

Mr. Jenkins executed a deed placing Ms. Jenkins's name on the farm. He testified that he "wanted [her] to feel that what [he] had was part of hers." In January 2008, Mr. and Ms. Jenkins created a living trust and conveyed the title of the property to the trust. The trust documents were not provided on appeal.

Karl Timmerman, St. Holden, MO, Ronald Ribaudo, Clayton, MO, for Appellant.

Edward Houlehan, Kansas City, MO, for Respondent.

Before: THOMAS H. NEWTON, P.J., JAMES M. SMART, JR., and GARY D. WITT, JJ.

In 2007, Ms. Jenkins wrote Mr. Jenkins a note saying that she wanted to sell the farm and move and that, absent a move, separation was inevitable. In November 2008, the company Mr. Jenkins worked for dissolved. In October 2009, Ms. Jenkins left the parties home and moved to Texas.

Mr. Jenkins testified that after the separation, he learned that Ms. Jenkins had opened a Commerce checking account, a Commerce savings account, a Wells Fargo account, and a Compass Bank account in her own name; had purchased a $20,000 CD and a $5,000 CD in her own name; and had withdrawn a cashier's check for $10,000. On cross-examination, he admitted that they both picked up the mail and he saw statements from Commerce Bank, but stated he had assumed they were for her credit cards.

Ms. Jenkins testified that Mr. Jenkins had full knowledge of the accounts, that Mr. Jenkins agreed to put money into a separate savings account because of concerns about identity theft, and that she set up the accounts with Mr. Jenkins as beneficiary. Ms. Jenkins further testified that she opened the Compass Bank account so they would have funds to purchase a home in Texas. On cross-examination, Mr. Jenkins elicited evidence that Ms. Jenkins had $62,720 in accounts at the time she left Mr. Jenkins and that Mr. Jenkins had $32,506.

Mr. Jenkins testified that his income was $1,662 in social security, with $400 of that amount deducted for a former spouse, and his expenses were $2,200. He had approximately $20,000 in monetary assets at the Bank of Grain Valley. In April 2011, his appraiser valued the farm at $185,000. Mr. Jenkins asked the court to award him, *inter alia*, the farm, several vehicles, a CD at Grain Valley titled in both parties' names in the amount of $26,777, the Bank of Grain Valley accounts, and Ms. Jenkins's wedding ring set, for which he testified he paid $3,800.

Ms. Jenkins requested maintenance and her attorney fees. She testified that her income was $680 a month and her expenses were $2,075. Ms. Jenkins asked for, *inter alia*, her car, the boat and trailer, half of the Grain Valley CD, and half of the farm.

At the close of trial, the trial court noted that Ms. Jenkins had asked and conclusions of law and the trial court asked Ms. Jenkins to submit proposed findings. No documentation of a submission of proposed findings appears in the record on appeal.

The trial court subsequently dissolved the marriage and determined whether the parties' property was non-marital or marital. The trial court identified the farm as marital property with a value of $185,000 and awarded it to Mr. Jenkins, along with his checking and savings accounts at the Bank of Grain Valley and half of the Grain Valley CD. It awarded as marital property to Ms. Jenkins "all bank accounts at Commerce Bank," the Wells Fargo account, half of the Grain Valley CD, debt owed by her son of $3,500, and her wedding rings.[1] The trial court denied maintenance and ordered each party to bear their own attorney fees. Ms. Jenkins appeals.

## Standard of Review

◼ Our review of the trial court's dissolution decision is under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Selby v. Selby*, 149 S.W.3d 472, 482 (Mo.App. W.D.2004). We affirm the trial court's decision "unless it is not supported by substantial evidence, it is

---

1. Although Ms. Jenkins submitted statements for these accounts to the trial court, her exhibits were not included on appeal, and it is not readily apparent what the values of these accounts were at the time of trial.

against the weight of the evidence, or it erroneously declares or applies the law." *Id.* All evidence and the reasonable inferences drawn therefrom are viewed in the light most favorable to the court's decision and we disregard contrary evidence. *Id.*

## Legal Analysis

Ms. Jenkins raises four points on appeal. She challenges the trial court's characterization of the farm and the wedding rings as marital property. She further argues that the trial court erroneously found that she committed misconduct to justify its distribution of marital property, and that its findings of fact were inadequate under Rule 73.01(c). For ease of discussion, we address her points out of order.

### *Characterization of the Farm*

In the first point, Ms. Jenkins argues that the trial court erred in characterizing the farm as marital property and awarding it to Mr. Jenkins because it was non-marital property owned by the Jenkins Trust. She contends that she should have been awarded her share of the realty as separate property "per the terms of the trust." Alternatively, she contends Mr. Jenkins gave her half the property as a gift of non-marital property when he added her name to the title.

▆▆▆ The trial court follows a two-step procedure in a dissolution proceeding. *Id.* at 482–83. It initially awards each spouse their respective non-marital property and then, considering all the relevant factors, it divides the marital property "in such proportions as [it] deems just." *Id.* (quoting § 452.330). Section 452.330.1 [2] directs the court to consider "all relevant factors," in this division, including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective . . .;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage;

"However, the trial court may attach the amount of weight to each of these it deems appropriate, and these factors are not exclusive." *Seggelke v. Seggelke,* 319 S.W.3d 461, 465 (Mo.App. E.D.2010). The court's division does not have to be equal; rather the division must be "fair and equitable." *Selby,* 149 S.W.3d at 491. Property acquired during the marriage is generally considered marital property, subject to certain exceptions. *Id.* at 483; § 452.330. Because of this statutory presumption, "non-marital property must be proven by clear and convincing evidence." *Blydenburg–Dixon v. Dixon,* 277 S.W.3d 815, 819 (Mo.App. W.D.2009)

▆▆▆ We reject Ms. Jenkins's argument that since the parties placed the farm in a trust, it became each of the parties' separate non-marital property. The parties created the trust for estate planning purposes. *See Selby,* 149 S.W.3d at 488 (rejecting argument that property placed into a trust became that party's separate non-marital property where the trusts "were clearly set up only to deal with the parties' property after death, not divorce."). Mr. Jenkins testified that Ms. Jenkins suggested the trust as a means to avoid probate and that it was an estate planning idea. We routinely find property placed into a trust during the marriage to

---

**2.** Statutory references are to RSMo 2000 and the Cumulative Supplement 2010. Rule references are to the Missouri Rules of Civil Procedure 2011.

be subject to division at dissolution: while the trustees may hold legal title, "the equitable interest in the trust is subject to classification and division by the trial court." *Seggelke*, 319 S.W.3d at 467. Further, here the evidence was that the parties were also the co-trustees. Finally, as we noted in *Selby*, even property placed in trust under the name of one spouse may be deemed marital property. 149 S.W.3d at 488. Just as the "name on the trust does not impact the classification of the property in the trust," the creation of the trust does not remove the property within it from a determination that it is marital property. *Id.* To re-characterize property as non-marital simply because of its placement in a trust is against public policy and "[t]estamentary trusts . . . are not created to change the character of the property or to prepare for divorce." *Id.* Thus, we reject Ms. Jenkins's argument that the creation of the trust vested separate non-marital property to each party.

Ms. Jenkins further argues that because Mr. Jenkins earlier added her name to the farm's title and later placed it into the Trust, Mr. Jenkins gave her half the property as a gift and it became her separate property. We do not agree. Adding a spouse to the title of the property transmutes separate non-marital property into marital property. *Selby*, 149 S.W.3d at 490–91. "Placing separate property into the names of both spouses creates a presumption that the property has been transferred to the marriage and clear and convincing evidence is required to show that the transfer was not intended as a gift." *Blydenburg–Dixon*, 277 S.W.3d at 819 (internal quotation marks and citation omitted). However, this transmutation "gifts" the property to the marriage, not to the other spouse as her individual non-marital property. *See, e.g., Smith v. Smith*, 985 S.W.2d 836, 847 (Mo.App. W.D.

1998). Consequently, the trial court did not err in finding the farm to be marital property. Ms. Jenkins's first point is denied.

*Characterization of the Wedding Rings*

In the third point, Ms. Jenkins contends that the trial court erred in finding that the wedding rings were marital property. Mr. Jenkins argues that Ms. Jenkins has not shown she was harmed by the finding that the rings were marital property because the rings were awarded to her. Ms. Jenkins responds that the mischaracterization of the rings worth $3,800–$4,000 was material because of the relatively small size of the marital estate.

If the rings were acquired during the marriage, a statutory presumption would arise that the rings were marital property. *Koger v. Koger*, 345 S.W.3d 330, 331 (Mo.App. S.D.2011) (citing § 452.330.2 & .3). However, even if acquired during the marriage, the rings would be wife's non-marital property if Ms. Jenkins had shown by clear and convincing evidence that the rings were a gift. *See id.* (citing (§ 452.330.2(1))). The finding of an *inter vivos* gift requires "(1) a present intention to make a gift on the part of the donor, (2) delivery of the property by the donor to the donee, and (3) an acceptance by the donee, whose ownership takes effect immediately and absolutely." *Smith v. Smith*, 797 S.W.2d 879, 881 (Mo.App. S.D.1990).

The record is devoid of evidence related to when the rings were acquired, thus the statutory presumption does not apply. At trial, Mr. Jenkins was the only witness to testify about the rings. He stated that he paid $3,800 for the wedding ring set, which included an engagement ring, and that he bought the set for Ms. Jenkins. He also testified that he would "like to have it back" because he felt Ms. Jenkins did not want the rings. Thus,

the evidentiary record does not support the finding that the rings were marital property. The record supports that the rings were a gift from Mr. Jenkins to Ms. Jenkins, and thereby her nonmarital property. *See Heineman v. Heineman,* 768 S.W.2d 130, 140 (Mo.App. W.D.1989); *Townsend v. Townsend,* 705 S.W.2d 595, 598 (Mo.App. E.D.1986). Consequently, the trial court erred in finding that the rings were marital property because that determination was not supported by substantial evidence and it was against the weight of the evidence. Further, given the value of the rings, we believe the error was material. *See Koger,* 345 S.W.3d at 332. Ms. Jenkins's third point is granted.

### Findings under Rule 73.01

In her fourth point, Ms. Jenkins argues the trial court erred in failing to make the findings of fact she requested pursuant to Rule 73.01(c) and that the failure to do so impedes meaningful appellate review. Specifically, she argues that the trial court divided the property unequally based on an erroneous finding of marital misconduct by Ms. Jenkins, but failed to specify the actions on which it based a "finding of misconduct," despite her request. Mr. Jenkins responds that the trial court made "sufficient findings of fact to support its division of the marital property as set forth in the Judgment" and argues that the trial court relied on Ms. Jenkins's conduct in removing $67,700 from the joint marital funds.

Rule 73.01(c) provides that in a bench trial, if a party requests, the court "shall, include in the opinion findings on the controverted fact issues specified by the party." Among other things, Ms. Jenkins requested the trial court to find: "is unequal distribution of the real and personal property necessary for a fair and reasonable distribution of the real and personal property between the Petitioner and Respondent" and, if so, "the reasons why such an uneven distribution is warranted." The court's failure to make Rule 73.01(c) findings when requested is error. *Cohen v. Cohen,* 178 S.W.3d 656, 662 (Mo.App. W.D.2005). However, Ms. Jenkins failed to file any post-trial motions. Rule 78.07(c) provides that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." The purpose of this rule is to bring the issue to the trial court's attention, thereby "alleviating needless appeals, reversals, and rehearings." *Villines v. Phillips,* 359 S.W.3d 44, 48 (Mo.App. W.D.2011). Consequently, Ms. Jenkins's claim is not preserved. *See Country Club of the Ozarks, LLC v. CCO Investments, LLC,* 338 S.W.3d 325, 335 (Mo.App. S.D. 2011). Her fourth point is denied.

### Marital Misconduct

In her second point, Ms. Jenkins argues that the trial court erred in finding she had engaged in marital misconduct and using that finding as a basis for an unequal distribution of marital property. She contends "[t]he trial court agreed, or apparently agreed," with Mr. Jenkins's allegations of misconduct.

First, the judgment does not state that Ms. Jenkins engaged in marital misconduct. It states: "[Ms. Jenkins's] conduct during the course of the marriage is questionable as to her contribution, support of the marriage[,] and willingness to be [Mr. Jenkins's] wife." It also notes that "[a]t the time of separation of the parties in 2009, [Ms. Jenkins] had placed in her name alone assets of $62,700." The trial court then awarded Ms. Jenkins those accounts into which the funds had been transferred.

The judgment cites conduct as a factor to "take into account" along with contributions and the source of funds, stating that it must consider "the relative contribution of each spouse in acquiring the asset, the source of funds utilized to acquire the assets and the parties conduct."

Second, we cannot determine from this record the value of the marital property awarded to each party. In its judgment, the trial court did not specify a numeric value for the majority of the bank accounts, and Ms. Jenkins did not provide her exhibits on appeal. It appears the property distribution was unequal based on the award to Mr. Jenkins of the farm, but we cannot determine the proportion each party received. Because we cannot determine the value of the property awarded, we cannot assess her claim that the trial court erred in its division of the marital property. It is the appellant's duty to provide the record on appeal. Rule 81.12(c). "Rule 81.12(e) specifically mandates that [a]ppellant is responsible for depositing all exhibits that are necessary for the determination of any point relied on.'" *Angel v. Angel*, 356 S.W.3d

357, 360 (Mo.App. W.D.2011) (quoting Rule 81.12(e)). Where the record does not include all of the "documents necessary for this court to determine the issue presented, our review is impossible and the claim of error must be dismissed." *Wallace v. Wallace*, 269 S.W.3d 469, 478 (Mo.App. E.D.2008). Consequently, Ms. Jenkins's second point is denied.

### Conclusion

The trial court erred in finding the wedding rings to be marital property. We remand to the trial court to award the wedding rings to Ms. Jenkins as nonmarital property and to adjust the marital property division as the trial court finds is reasonable under the evidence and otherwise affirm.

SMART and WITT, JJ. concur.