Lisa White Hardwick, Judge
Paul Seibold ("Husband") appeals from the judgment dissolving his marriage to Jennifer Schutter ("Wife"). He contends the circuit court erred in identifying, classifying, valuing, and dividing several items of the parties' property. He also asserts that the court violated his right to freedom of speech by ordering him not to demean or disparage Wife. Lastly, Husband argues that the court erred in incorporating a preliminary injunction into the amended *497 judgment and in denying his motion to set aside the amended judgment as void under Rule 74.06(b)(4). For reasons explained herein, we affirm, in part, and reverse and remand, in part.
FACTUAL AND PROCEDURAL HISTORY
Husband and Wife were married in November 2002 and had one son, born in July 2009. Son is a special needs child who requires extensive medical and therapy care and 24-hour assistance and supervision. Wife is a physician and minority owner of Northland Hospitalists. Husband is an information technology sales specialist with Cisco Systems.
The parties separated in March 2012, after Wife filed a petition for dissolution of marriage, and Husband filed a counter-petition. In an amended petition, Wife sought sole legal and physical custody of Son and also asserted a count for conversion, in which she alleged that Husband had converted $450,000 in marital assets to his own use. Husband sought joint legal and physical custody of Son and denied Wife's conversion claim.
Trial was held over several days in April, September, October, and November 2013. The court entered a judgment dissolving the marriage in December 2013. In its judgment, the court awarded Wife sole legal custody and the parties joint physical custody of Son. Husband was ordered to pay child support, including an arrearage of $31,410. The court awarded Wife $619,389 in marital assets and Husband $745,120 in marital assets, and the court ordered Husband to pay $101,265 to Wife to equalize the division of assets. In dividing the parties' property, the court considered, among other things, that Husband had dissipated $638,360 in marital assets during the parties' separation, provided only nominal financial assistance to Wife and Son while the dissolution was pending, and failed to comply with the court's temporary order to pay one-third of the mortgage on the marital residence pending resolution of the dissolution.
Both parties filed post-judgment motions seeking to amend the judgment or to reopen the evidence. In his motion, Husband took issue with several of the court's findings as to why its custody arrangement and parenting plan were in Son's best interest. Husband also challenged the court's calculation of child support and the arrearage, its findings concerning his dissipation of marital assets, and the court's valuation and division of marital property. In her motion, Wife challenged the award of joint physical custody, the amount of parenting time awarded to Husband, and some of the other parenting plan provisions.
The court held a hearing on the parties' motions on March 10, 2014. The court entered an amended judgment of dissolution of marriage on March 25, 2014. In the March 2014 amended judgment, the court adjusted some of the parenting time provisions and ordered the parties to pay the Guardian ad Litem's remaining fees.
Both parties filed post-judgment motions seeking to reconsider or amend the March 2014 amended judgment or to reopen the evidence. In his motion to reconsider the March 2014 amended judgment, Husband again challenged the court's findings that its custody arrangement and parenting plan were in Son's best interest, the calculation of child support and the arrearage, the court's findings concerning his dissipation of marital assets, and the court's valuation and division of marital property. In her motion to correct, vacate, amend, or reopen evidence, Wife alleged, that, since the entry of the March 2014 amended judgment, she learned of other assets belonging to Husband that he had not disclosed to the court. Specifically, she *498 alleged that Husband had failed to disclose his interest as the sole owner of Progressive Journey, Inc., a Nebraska corporation, and he had failed to disclose that Progressive Journey owned a home in Parkville ("the Deer Run property") that was valued at $384,000. Additionally, Wife alleged that Husband possessed a car that he had claimed in court not to possess. Wife also filed an application for order to show cause why Husband should not be held in contempt of court for failing to pay the court-ordered child support and the $101,265 money judgment that the court ordered Husband to pay Wife in the March 2014 amended judgment.
On June 19, 2014, the court entered an order sustaining Wife's post-trial motion. The court set aside the March 2014 amended judgment only as to the property and debt division and attorney's fees and expenses.
Meanwhile, on June 9, 2014, Wife filed a petition for a temporary restraining order without notice and motion for emergency modification of parenting time. The court granted Wife's petition for a temporary restraining order without notice after finding that Son was "abused and/or neglected" while in Husband's care and that, despite Wife's best efforts, Husband could not be served prior to the court's issuing the order. The court granted Wife temporary sole legal, physical, and residential custody of Son, restrained Husband from having unsupervised contact with Son, and ordered that a hearing be held in 10 days. After several continuances and extensions of the temporary restraining order, the court, with the parties' agreement, issued a preliminary injunction on September 2, 2014, restraining Husband from exercising unsupervised parenting time with Son "until the Full Injunction Hearing/Restraining Order Hearing can be held in this matter" and awarding Wife temporary sole legal, physical, and residential custody of Son "immediately and until further Order of this Court." In October 2014, Husband filed a motion for trial setting on the injunction, but the record does not indicate that any further action was taken on this motion.
With regard to the new trial on the property issues, the court issued an order advising the parties that they could "introduce relevant evidence of the value of any asset owned by the parties at the time of the Dissolution of Marriage." The new trial was originally set to occur in October 2015 but was continued to December 2015 and finally held in February 2016. On April 18, 2016, the court entered an amended judgment of dissolution of marriage.
Wife subsequently filed a motion to correct, amend, or issue a nunc pro tunc judgment to include the legal description of the marital residence in the judgment. Husband filed a motion for new trial or to amend the judgment. The court entered a nunc pro tunc amended judgment adding the legal description of the marital residence on May 20, 2016. In the May 2016 amended judgment, the court stated that "this matter comes on for trial and further evidentiary hearing on the topics of asset and debt identification, valuation, characterization, and division." Before addressing the property issues, the court stated in its findings that all orders regarding Son were contained in the March 2014 amended judgment and the September 2, 2014 preliminary injunction. The court then classified, valued, and divided all of the parties' assets and debts.[1] The court noted that it considered Husband's misconduct, which it set forth in five pages in the *499 judgment, when dividing the parties' marital property. Husband's acts of misconduct included, among other things, fraudulently hiding and secreting marital property, squandering marital assets, failing to make full disclosure of all assets, misrepresenting his financial status during testimony under oath, testifying falsely about assets under oath, and disobeying the court's orders. Husband appealed.[2]
In February 2017, Husband filed a motion in the circuit court to set aside the May 2016 amended judgment pursuant to Rule 74.06(b)(4). Husband argued that, insofar as the judgment purported to make the September 2, 2014 preliminary injunction permanent, the court violated Rule 92 because it did not afford him a trial on the merits. Husband also argued that the May 2016 amended judgment was void because it modified his custody of Son to allow him only supervised visitation without providing him any notice or hearing on the merits to support the modification, thereby depriving him of due process.
After Wife filed suggestions in opposition to Husband's motion, the court held a hearing and denied Husband's motion. Husband appealed this judgment. We consolidated Husband's appeals.
STANDARD OF REVIEW
Appellate review of a dissolution judgment is under the standard of Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). Jenkins v. Jenkins , 368 S.W.3d 363, 366 (Mo. App. 2012). We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. at 366-67. The party challenging the dissolution judgment has the burden of demonstrating error. Shaw v. Shaw , 413 S.W.3d 332, 334 (Mo. App. 2013). We view the evidence and any reasonable inferences therefrom in the light most favorable to the court's decision and disregard all contrary evidence and inferences. Id. We recognize that the circuit court was "free to believe or disbelieve all, part, or none of the testimony of any witness." Id. (citation omitted).
ANALYSIS
In Point I, Husband contends the circuit court erred in classifying three of his retirement accounts as marital property before awarding them to Wife. He contends the uncontested evidence at trial showed that all of two of the accounts and a portion of the third account were accumulated before the marriage and, therefore, were his nonmarital property.
The circuit court has broad discretion in classifying property in a dissolution proceeding. Howery v. Howery , 320 S.W.3d 742, 747 (Mo. App. 2010). "When characterizations of property as marital or separate rest on an assessment of witness credibility, this court defers to the trial court's determination of that credibility." Hernandez v. Hernandez , 249 S.W.3d 885, 888 (Mo. App. 2008) (citation omitted). We presume the circuit court's classification of property as marital or nonmarital is correct. Garrison v. Garrison , 255 S.W.3d 37, 42 (Mo. App. 2008). The burden is on the appellant to demonstrate error. Id.
While retirement benefits accumulated during a marriage are considered marital property, " 'retirement benefits accumulated prior to marriage are not marital property and are not divisible.' "
*500 Kelly v. Kelly , 340 S.W.3d 673, 679 (Mo. App. 2011) (citation omitted). Therefore, when dividing a retirement account, the circuit court "should separate the account into its marital and nonmarital portions according to the source-of-funds rule and set aside the nonmarital portion to the spouse who earned it." Valentine v. Valentine , 400 S.W.3d 14, 24 (Mo. App. 2013).
The accounts at issue are Husband's Janus IRA, valued at $22,775.01 at the time of trial; a Janney Montgomery Scott account, valued at $8,066.58 at the time of trial, which Husband asserts contains both marital and nonmarital funds from his cashed-out EMC 401(k); and an American Century 401(k), valued at $26,457.75 at the time of trial. The court found that the Janus IRA, Janney Montgomery Scott account, and the American Century 401(k) were marital and set them aside to Wife. Husband contends that he accrued all of the Janus IRA, part of the EMC 401(k) that was transferred into the Janney Montgomery Scott account, and all of the American Century 401(k) before the marriage.
Regarding the Janus IRA, EMC 401(k), and Janney Montgomery Scott account, the court classified these accounts exactly as Husband classified them on his sworn statement of marital and nonmarital property and liabilities that he filed in December 2015 ("December 2015 property statement"). Husband testified in September 2013 that all of the funds in his Janus IRA had been rolled over from a pension that he earned entirely before the marriage. However, in his December 2015 property statement, Husband listed the Janus IRA, valued at $22,775.01, as entirely marital property. The court could accept Husband's sworn property statement that the Janus IRA was entirely marital property over his earlier conflicting testimony, and we defer to its decision to do so. Hernandez, 249 S.W.3d at 888.
As for the EMC 401(k) and Janney Montgomery Scott account, the parties agreed that Husband had accrued two years' worth of the funds in his EMC 401(k) before the marriage and cashed out the entire EMC 401(k) account for $262,210 in April 2013. In his December 2015 property statement, Husband listed the marital portion of his EMC 401(k) account as having a value of $224,735 in March 2012, and a zero value in December 2015. Husband listed the Janney Montgomery Scott account as entirely marital, with a value of $8,066.58 in December 2015. This is exactly how the court valued and classified these two accounts in its judgment. Husband's contention on appeal that the $8,066.58 in the Janney Montgomery Scott account consisted, in part, of nonmarital funds from his cashed-out EMC 401(k) is belied by his own sworn December 2015 property statement. Consequently, if, as Husband claims, the court erred in classifying the entire Janus IRA, the portion of the EMC 401(k) valued at $224,735 in March 2012 and zero in December 2015, and the entire Janney Montgomery Scott account as marital, such classification was invited error upon which Husband cannot rely on appeal. Workman v. Workman , 293 S.W.3d 89, 101 (Mo. App. 2009).
Lastly, regarding the American Century 401(k), Husband testified that he worked for American Century before he married Wife and did not work for American Century at any time after they were married. Wife testified that, even though she listed the American Century 401(k) as a marital asset on her statement of marital and nonmarital property and liabilities, she believed that Husband accrued the plan before they were married.
*501 The evidence at trial indicates that Husband accrued the entire American Century 401(k) before the marriage and, therefore, it was his nonmarital property. Nevertheless, Wife argues that the court did not err in classifying the account as marital and setting it aside to her because of Husband's extensive misconduct, which included secreting and squandering marital assets. While Section 452.330.1(4), RSMo 2016, allows the court consider the parties' conduct during the marriage when dividing marital property, it does not allow the court to classify nonmarital property as marital based on the nonmarital property owner's misconduct. The court was free to award Wife a larger share of the marital estate in consideration of Husband's misconduct, but it had no authority to give Husband's nonmarital property to Wife. The court abused its discretion in classifying Husband's American Century 401(k) as marital property and awarding it to Wife. That portion of the judgment is reversed, and the case is remanded for the circuit court to set aside the American Century 401(k) as Husband's nonmarital property and to adjust the marital property division as the court finds reasonable under the evidence. Point I is granted with regard to the classification and division of the American Century 401(k) and denied in all other respects.
In Point II, Husband contends the circuit court erred in stating values on multiple dates for marital assets in its judgment. For most of the assets listed in the judgment, the court stated values as of March 2012, which was the date of separation; December 31, 2013, which was the date the original dissolution judgment was entered; and December 2015, which was when the new trial on the property issues was going to be held before it was continued to February 2016. For some items, the court listed a value as of February 2016. Husband asserts that including different values on different dates for assets in the judgment was erroneous because the law required the court "to choose one such date and one such value."
As Husband acknowledges in his brief, however, "the trial court is not required to assign values to marital property." Waldon v. Waldon , 114 S.W.3d 428, 431 (Mo. App. 2003). Rather, all that is required is "evidence on the record from which the value of the marital property can be determined." Id. "Generally, the appropriate date for valuing marital property is the date of trial." Martin v. Martin , 504 S.W.3d 130, 135 (Mo. App. 2016).
When the court set aside the judgment as to property issues and ordered a new trial on those issues, it entered an order, at Husband's request , allowing the parties to introduce "relevant evidence" of the value of any asset owned at the time of the dissolution. The record shows that both parties provided the court with values for each asset as of the date of separation, the date the original dissolution judgment was entered, the date the new trial was going to be held before it was continued, and, in some cases, the date the new trial was actually held. Husband does not argue that the values listed in the judgment for the various dates were not supported by the evidence. Indeed, the values were supported by testimony or by the parties' statements of marital and nonmarital property.
The judgment indicates that, in dividing marital assets, the court relied on the value that was closest in time to the date of the new trial, which is what Husband had asked the court to do. The judgment further indicates that the court considered the earlier values in determining whether Husband had secreted or squandered assets. If the court found that he had secreted or squandered an asset, then the court *502 relied on an earlier value, which was entirely proper. See id. at 136. Because the values listed in the judgment were supported by the evidence and the court followed the law in valuing and dividing the marital assets, we find no error. Point II is denied.
In Point III, Husband contends the evidence was insufficient to support the circuit court's finding that he possessed an undisclosed bank account worth $200,000. In its May 2016 amended judgment, the court found that Husband possessed a bank account, "BK NYC," that was worth $200,000 at one time, but the present value was unknown. The court further found that Husband failed to disclose this account throughout the litigation and that he had used all of his bank accounts "in furtherance of his attempt to defraud [Wife] out of receiving marital funds." The court included the $200,000 value of the BK NYC account in its calculation of Husband's total bank account balances and found that the value of the parties' bank accounts, "with said funds heavily weighted in favor of [Husband,] shall be considered by the Court in the overall division of assets and debts."
Evidence regarding the BK NYC account was offered for the first time at the February 2016 trial. Wife testified that she discovered this account while investigating the purchase of the Deer Run property. Wife learned that Progressive Journey, Husband's previously undisclosed corporation, had purchased the Deer Run property with funds contained in the corporation's Mazuma bank account. Wife testified that the funds in the Mazuma account came from two transfers: a $250,000 transfer on December 4, 2013, and a $200,000 transfer on March 25, 2014. Wife testified that, during discovery, Husband provided falsified wire transfer fund forms misrepresenting the source of these transfers. Wife asserted that the wire transfer fund forms Husband provided were falsified because of discrepancies between those forms and federal wire transfer forms provided by Mazuma under business records affidavits. With regard to the $200,000 transfer, which is the only transfer at issue, Husband provided a wire transfer form that indicated the $200,000 was transferred into Progressive Journey's account on March 21, 2014, from an IRA belonging to his paramour, Dedra Berg. But, Husband's form listed an incorrect ABA number for the receiving institution, and Mazuma's records showed that the $200,000 wire transfer into Progressive Journey's account occurred on March 25, 2014, and was from "BK NYC," not Berg's IRA.
Husband argues that, because Wife was unable to locate any records from a bank in New York City, despite her counsel's "exhaustive records requests," her contention that the $200,000 came from a bank in New York City and not Berg's IRA was "mere suspicion, surmise, and conjecture." The court found, however, that Husband had failed to make full disclosure of his accounts and assets. The court could have reasonably believed that Wife's inability to locate records from the New York City bank was due to Husband's nondisclosure rather than to the nonexistence of the account. Husband further asserts that the court should have believed his accounting expert's testimony that the funds came from Berg's IRA and that BK NYC "could have been" one of the banks the funds were routed to before they arrived at Mazuma. The court was not required to accept this testimony, which the expert indicated was merely a guess. Also, Husband argues that the court should have believed Berg, who testified that she used the $200,000 to purchase the Deer Run property as an "investment." Given that Progressive Journey purchased the Deer Run *503 property, the court could have found Berg's testimony that she deposited $200,000 to purchase the Deer Run property as an "investment" not credible, as the record does not indicate that she had any interest in Progressive Journey.
Instead of accepting Husband's evidence, the court chose to believe Wife's testimony, as supported by the Mazuma records, that Husband possessed an undisclosed bank account worth $200,000 that he used to purchase the Deer Run property. We defer to the court's decision to do so. Shaw , 413 S.W.3d at 334. Point III is denied.
In Point IV, Husband contends the circuit court erred in ordering him not to "in any way, demean or disparage" Wife. He argues that this order constitutes a "vague and overbroad" prior restraint on his right to freedom of speech under the First Amendment of the United States Constitution and Article I, section 8 of the Missouri Constitution.
In its judgment, the court included this paragraph:
The Court further finds that all previous Orders regarding nondisclosure of information shall remain in full force and effect and neither party shall use any information obtained during the course of the litigation for any purpose, and the protective order as to [Husband]'s financial information shall similarly and permanently apply to [Wife], such that [Husband] shall not, in any way, demean or disparage [Wife] or utilize any of her financial or other information outside the course of this proceeding.
The previous orders to which the court was referring were entered in 2015, while the parties were awaiting the new trial on the property issues. At Wife's request, the court entered a protective order in October 2015 "to safeguard and protect confidential, personal, financial, business records and information, and all other information that may be disclosed in the course of this action through discovery" and "to prevent injury through use not in connection with this pending litigation and to prevent disclosure to persons other than those involved in this litigation." The protective order outlined procedures for the parties to follow with respect to information, documents, and things produced in the litigation, and provided that each party may be liable to the other for damage, loss, cost, and liability, and legal fees arising out of or resulting from any intentional disclosure other than as expressly permitted in the order.
In December 2015, Husband filed an emergency ex parte motion requesting an addendum to the protective order. In his motion, Husband alleged that, during the deposition of Husband's CPA, Wife "made statements suggesting she intended to convey information to outside sources." The court subsequently entered an addendum to the protective order directing that the parties continue to follow the procedures set forth in the October 2015 protective order "and further that neither party shall disclose any information, including tax information, whether personal or corporate, regarding any business interest of either party."
Husband argues that, through the addendum to the protective order, he desired only to restrict the disclosure of the parties' business and financial information. During the new trial on property issues, however, when Husband's counsel was questioning Husband about what he was seeking in his proposed amended judgment, Husband's counsel asked, "Now, you've asked this Court, and I believe this Court has entered orders, that say[ ] neither one of you should be running out to other hospitals or other medical practices *504 or other business ventures or the IRS or anyone else and saying, look what he did or look what she did; correct?" Husband confirmed that he had asked the court for a protective order to that effect and acknowledged that the court had entered such an order. Although Husband did not include his proposed amended judgment in the record on appeal, the context of his testimony strongly suggests that he was seeking to include the provisions of the protective order and addendum in the amended judgment.[3]
Husband's testimony indicates that he interpreted the court's prior protective order and addendum to restrict the parties not only from disclosing financial or business information to anyone but also from "running out to ... anyone else and saying, look what he did or look what she did," in other words, from demeaning or disparaging each other. Indeed, in an email exchange between the parties' counsel after the deposition of Husband's CPA, Husband's attorney said as much to Wife's attorney:
As you will recall, the court ordered that there be no disclosure of any information related to any of the companies owned by the parties. From the conversations yesterday following the depositions, it appears as though your client, with your knowledge, intends to disclose tax information related to companies in which [Husband] may have an interest. If any disclosure is made to any third party, including the IRS, my client would deem this a violation of the court order. I would anticipate him suing anyone involved.
Just as it would not be in their child's best information (sic) for [Husband] to share information related to [Wife]'s personal life or practice of medicine (not the Hospitalists group), similarly it would not be in the child's best interest for anyone to share information regarding my client.
(Emphasis added.) This email, which was offered as an exhibit at trial, shows that Husband desired that both parties be restricted from sharing any information-business, financial, or personal-about each other, as sharing such information would not be in Son's best interest.
We find that the court's restriction in the amended judgment against disclosing demeaning or disparaging information, although not artfully worded, applies to both parties.[4] The email from Husband's counsel, combined with Husband's testimony affirming that he asked the court to order the parties to refrain from "running out to ... anyone else and saying, look what he did or look what she did," demonstrate that Husband supported the inclusion of an order to that effect in the amended judgment. For Husband to now insist that restricting his ability to demean or disparage Wife hinders his right to freedom of speech is, at most, invited error. Point IV is denied.
Husband's Points V and VI concern language in the May 2016 amended judgment regarding Son. On page 5 of the May 2016 amended judgment, the circuit court stated:
*505 All orders as to the minor child are contained in the Court[']s March 25th, 2014, Amended Judgment, which remains in full force and effect as to child custody, child support, parenting time, parenting plan, and Guardian Ad Litem fees, together with the injunction issued by the Court on September 2, 2014 .
In Point V, Husband asserts that, through this language, the court incorporated the September 2014 preliminary injunction into the May 2016 amended judgment. He argues this incorporation was erroneous because no permanent injunction hearing was ever held, and, therefore, the preliminary injunction was dissolved as a matter of law. In Point VI, Husband contends that the court erred in denying his Rule 74.06(b)(4) motion to set aside the May 2016 amended judgment as void because this language modified his custody of Son without giving him any notice or opportunity to be heard.
Both of Husband's points are premised on his incorrect assertion that the May 2016 amended judgment affected the custody and parenting time provisions. In fact, the record clearly shows that the February 2016 trial and the May 2016 amended judgment did not address, and had no effect whatsoever, on custody or parenting time. When the court set aside the March 2014 amended judgment, it did so with regard to only the property and debt division and attorney's fees and expenses. The court altered the March 2014 amended judgment's custody and parenting time provisions when it entered the agreed-upon September 2, 2014 preliminary injunction, which was to remain in effect until a hearing on a permanent injunction could be held. It is true that, when Husband requested that the court set a trial date for issues involving Son that was separate from the new trial on the property issues, the court denied his request in an order dated July 8, 2015. Based upon the court's denial of a separate trial date, it appeared that the court intended to hold the trial on issues involving Son at the same time as the new trial on the property issues.
The transcript of the February 2016 trial, however, indicates that, sometime between the court's July 8, 2015 denial of Husband's request to set a separate trial date and the February 2016 trial, the court changed its mind about adjudicating issues involving Son at the same time as the property issues, and the parties were aware of this change. During Wife's direct testimony at the beginning of the February 2016 trial, Wife testified that she did not include any issues related to Son's "support, his medical support, any financial issues related to his care or any of the parenting time issues" in her proposed amended judgment because of the "the court's directive about that." At the close of the February 2016 trial, Husband's counsel asked, "Would the Court entertain a date to come back on child-related issues?" The court responded that the case would be transferred to Judge Shafer and that "[y]ou are welcome to get a date from him as soon as you wish." After Husband's counsel replied, "Very well," the court reiterated that it had concluded its part of the case but that "you are welcome to go ahead and talk to [Judge Shafer] about a date for the child care issues." Husband's counsel stated, "Very good. Thank you."[5]
*506 Consistent with the testimony and discussion at trial, the opening paragraph of the May 2016 amended judgment stated that the February 2016 trial was "on the topics of asset and debt identification, valuation, characterization, and division." Contrary to Husband's assertion, the subsequent language on page 5 of the May 2016 amended judgment was nothing more than a finding of fact acknowledging that all orders regarding Son were contained in the March 2014 amended judgment and the September 2014 preliminary injunction. This finding of fact did not incorporate by reference either the March 2014 amended judgment or the September 2014 preliminary injunction, it did not make the September 2014 preliminary injunction permanent, and it did not modify the custody or parenting time provisions. It merely acknowledged that those prior judgments addressed all issues concerning Son and that those judgments were not affected by the court's entry of an amended judgment addressing property issues. Husband's contention that the May 2016 amended judgment affected the custody and parenting time provisions is simply wrong. The court did not err in denying Husband's Rule 74.06(b)(4) motion. Points V and VI are denied.
CONCLUSION
The portion of the judgment classifying Husband's American Century 401(k) as marital property and awarding it to Wife is reversed. The case is remanded to the circuit court to set aside the American Century 401(k) as Husband's nonmarital property and to adjust the marital property division as the court finds reasonable under the evidence. The judgment is affirmed in all other respects. We deny Wife's motion to dismiss Husband's appeal of the judgment denying his Rule 74.06(b)(4) motion and her request for attorney's fees included therein.
All Concur.

The court also ordered the parties to pay their own attorney's fees and to split the costs of the action. This order is not at issue on appeal.

On January 13, 2017, Husband filed voluntary Chapter 13 bankruptcy in the United States Bankruptcy Court. Consequently, the appeal in this court was stayed. The stay was lifted in April 2017.

Pursuant to the protective order's terms, the obligations and duties arising under the order, which would include the addendum, survived the termination of the action.

We interpret the court's statement that "the protective order as to [Husband]'s financial information shall similarly and permanently apply to [Wife], such that [Husband] shall not, in any way, demean or disparage [Wife] or utilize any of her financial or other information outside the course of the proceeding," as merely clarifying that the protections afforded to Husband apply equally to Wife.

The record indicates that, after the entry of May 2016 amended judgment, Husband initiated a proceeding before Judge Shafer in Case No. 12AE-CV00757-03 to attempt to prevent Wife from relocating with Son to Washington. When Wife abandoned her proposed relocation to Washington and gave notice of her proposed relocation to Texas, Husband filed a motion to prevent the relocation in Case No. 12AE-CV00757-04. During the course of that case, the court entered a custody, visitation, and relocation order pendente lite, which appears to still be in effect, and Husband filed several motions concerning custody and parenting time. The Case.net record for Case No. 12AE-CV00757-04 indicates that this case is still pending in the circuit court.