Corrected
January 13, 2023



# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| SANDRA KADERLY, | ) | |
| | ) | |
| Appellant, | ) | WD84855 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | December 13, 2022 |
| KEVIN KADERLY, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Susan E. Long, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge,
Anthony Rex Gabbert, Judge

Sandra Kaderly ("Wife") appeals from the trial court's judgment entered in the Circuit Court of Jackson County dissolving her marriage to Kevin Kaderly ("Husband"). Wife claims that the trial court erred in concluding that half of the proceeds from the sale of Wife's court reporting business were marital property, and alternatively erred in determining that the increase in value of the business during the marriage was attributable to contributions by Wife and Husband. Finding no error, we affirm.

**Factual and Procedural History**[1]

In March 2010, Wife formed SLC II, Inc. ("SLC"), a Missouri corporation of which she owned 100 percent of the shares. SLC owned a 50 percent membership interest in Cooper-Moeller, LLC ("Cooper-Moeller"), a court reporting business. The other 50 percent membership interest in Cooper-Moeller was owned by GRM I, Inc. ("GRM"). Glenda Moeller ("Moeller"), another court reporter, owned 100 percent of the shares of GRM.

In June 2016, Wife discovered irregularities in Cooper-Moeller's business accounts. Wife learned that Moeller had been using Cooper-Moeller funds to repay a personal loan Moeller took from her 401(k) account. Then in the fall of 2016, Moeller made withdrawals from Cooper-Moeller's payroll account that caused the account to have insufficient funds to pay payroll taxes. Wife hired an attorney to provide legal advice regarding the business relationship.

Wife and Husband married in February 2017. At the time of the marriage, Wife was still the 100 percent shareholder of SLC, which still held a 50 percent membership interest in Cooper-Moeller.

On April 14, 2017, SLC and GRM entered into a membership interest transfer agreement ("Transfer Agreement") to address ownership of the membership interests in Cooper-Moeller. The Transfer Agreement was also signed by Moeller and Wife in their

---

[1]We view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary evidence and inferences. *Reichard v. Reichard*, 637 S.W.3d 559, 567 n.1 (Mo. App. W.D. 2021).

individual capacities.  The negotiated terms set forth in the Transfer Agreement had been offered to GRM on a buy-or-sell basis, but GRM elected to sell its membership interest in Cooper-Moeller to SLC in lieu of acquiring SLC's membership interest.

In the Transfer Agreement, GRM agreed to sell its 50 percent membership interest in Cooper-Moeller to SLC for $30,000, and SLC promised that, upon its purchase of GRM's interest in Cooper-Moeller, it would cause Cooper-Moeller's name to be changed to remove the reference to "Moeller."  The Transfer Agreement included a statement of Cooper-Moeller's debt obligations totaling $217,445.62,[2] including a line of credit with Cornerstone Bank with a balance of $150,664.01.  In further consideration of GRM's agreement to sell its membership interest, SLC agreed to "cause Cornerstone Bank to fully release [GRM] and Moeller from any and all obligations to Cornerstone Bank" on the line of credit, and also agreed to have Cooper-Moeller "assume any debts and release [GRM] and Moeller from all other obligations related to [Cooper-Moeller], excluding Moeller's personal 401(k) loan."  The Transfer Agreement also included the following indemnity provision:

> [SLC] and [Wife] agree to protect, defend, indemnify and to hold harmless [GRM] and Moeller, their successors and assigns against and in respect to any and all loss, claim, damage, cost or expense including reasonable attorney's fees resulting from (1) any breach of any representations, warranties and agreements of [SLC] herein contained; (2)  any obligation or liability, whether accrued, absolute, contingent or otherwise of [SLC] or [Cooper-Moeller] which is not expressly assumed by [GRM] pursuant to the terms of this Agreement.

---

[2]The statement of debt obligations included a line devoted to "Glenda Moeller - 401K Loan - Personal $23,683.53."  That line has been stricken through via pen, with the handwritten initials "GM" and "SLC" next to it.

GRM assigned its membership interest in Cooper-Moeller to SLC effective April 14, 2017. Though GRM was selling its membership interest in Cooper-Moeller to SLC, Cooper-Moeller issued the check to pay GRM the agreed-on purchase price for the membership interest. On August 19, 2017, Moeller, Cooper-Moeller, Wife, and Cornerstone Bank entered into a release of guarantor agreement ("Release of Guarantor") in accordance with the terms of the Transfer Agreement. Cornerstone Bank released Moeller from a June 2015 guaranty wherein Moeller agreed to guaranty Cooper-Moeller's payment of a $175,000 promissory note owed to Cornerstone Bank. Following execution of the Release of Guarantor, Wife became the sole guarantor of Cooper-Moeller's indebtedness to Cornerstone Bank.

Shortly after transfer of GRM's membership interest in Cooper-Moeller to SLC, Cooper-Moeller changed its name to TCG Futures, LLC, ("TCG Futures"), effective April 14, 2017.

On November 24, 2019, Wife filed a petition seeking to dissolve her marriage to Husband ("Petition"). Husband filed an answer and counter-petition ("Counter-Petition") on January 30, 2020. Wife answered the Counter-Petition on February 4, 2020.

In February 2020, while the dissolution proceeding was pending, Veritext, LLC ("Veritext"), a national court reporting business, purchased the majority of TCG Futures' assets for a purchase price of $1.95 million. At the time of the sale, Wife entered into a noncompete agreement with Veritext that restricted her ability to work as a court reporter within a 50-mile radius of Kansas City for five years. By the time of trial in December 2020, Wife had received $1,783,502.25 from the sale of TCG Futures' assets, and was set

4

to receive approximately $140,000 in February 2021. Wife initially deposited the proceeds from the sale into a TCG Futures account at Commerce Bank. Wife then used the proceeds of the sale to meet TCG Futures' final payroll obligations, to purchase two vehicles for her sons, to donate to charity, to purchase and renovate a home in Lake Lotawana, and to fund a retirement account. The balance of the proceeds--approximately $83,331 as of December 2020--remained in the TCG Futures account at Commerce Bank.

On May 10, 2020, Husband filed a motion seeking leave to file an amended counter-petition in order to include TCG Futures and Veritext as parties. The trial court granted Husband's motion to include TCG Futures as a party but denied Husband's motion to add Veritext as a party. Husband filed his first amended counter-petition ("Amended Counter-Petition") on May 29, 2020. The Amended Counter-Petition alleged that TCG Futures was a necessary party because Wife formed and operated TCG Futures during the marriage. Wife's answer to the Amended Counter-Petition admitted that TCG Futures conducted business during the marriage but denied that TCG Futures was formed during the marriage.

During a two-day trial in December 2020, the sole issue was the division of the parties' property and debts. The trial court heard testimony from Wife, Husband, and two expert witnesses, and considered admitted exhibits regarding the creation and operation of TCG Futures and its predecessors, the change in value of TCG Futures and its predecessors over the course of the marriage, and the sale of TCG Futures to Veritext.

Wife's expert witness prepared a report that was admitted into evidence. The report explained that immediately upon transfer of GRM's membership interest in Cooper-Moeller to SLC, Cooper-Moeller became a single-member limited liability company. As

5

a result, Cooper-Moeller, which had been classified as a partnership since March 2010, could no longer be so classified because a partnership terminates for income tax purposes when it ceases to have two or more partners. Wife's expert witness further explained that effective April 15, 2017, TCG Futures (f/k/a Cooper-Moeller) "elected to convert its tax status from a single member limited liability company (a disregarded entity for income tax purposes) to an S-corporation." Though at that moment, the sole member of TCG Futures remained SLC, Wife's expert also explained that "[c]ontemporaneous with TCG Futures' election to convert its tax status to an S-Corporation, [Wife] simplified the ownership structure and exchanged her 100[ percent] ownership interest in [SLC] for [SLC's] ownership interest in TCG Futures because TCG Futures was [SLC's] sole income producing asset." Accordingly, SLC filed its final income tax return in 2017, and TCG Futures' tax returns from that point forward identified Wife as the sole owner of the business.

The trial court issued its judgment and decree of dissolution of marriage ("Judgment") on August 3, 2021. The trial court concluded that the proceeds from the sale of TCG Futures "are part marital and part non-marital" because Wife owned one half of the company before marriage and acquired the other half of the company during the marriage. The trial court found that Wife "assumed over $200,000 in liabilities on behalf of [Cooper-Moeller] as part of the sale of the business from Ms. Moeller to [Wife]." The trial court also found that the "business was in bad shape at the time [Wife] acquired the entire portion of the business and that it had a negative net worth at the time of the acquisition." Accordingly, the trial court concluded that $975,000 of the proceeds from

6

the sale of TCG Futures was marital property. The trial court set aside to Wife all property that had been acquired with proceeds from the sale of TCG Futures, and the bank account with the remaining proceeds, and, after dividing the remaining marital property and debts, ordered Wife to pay Husband $200,000 to "effectuate an equitable division of the marital estate."

Wife and Husband each filed post-judgment motions. The trial court denied the post-judgment motions.

Wife appeals.

## Standard of Review

We will affirm the trial court's judgment in a court-tried dissolution proceeding "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Reichard v. Reichard*, 637 S.W.3d 559, 569 (Mo. App. W.D. 2021) (quoting *Torres v. Torres*, 606 S.W.3d 168, 173-74 (Mo. App. W.D. 2020)). We defer to the trial court's assessment of the evidence, including its credibility determinations. *Id.* As such, we view the evidence and reasonable inferences drawn therefrom in the light most favorable to the judgment, disregarding all contrary evidence and inferences drawn therefrom. *Id.* "[W]here the parties do not request specific findings of fact on an issue, we presume the trial court entered its judgment on that issue in accordance with the applicable statutes." *Torres*, 606 S.W.3d at 174 (quoting *Krepps v. Krepps*, 234 S.W.3d 605, 615-16 (Mo. App. W.D. 2007)).

The trial court has broad discretion in its classification of property as either marital or separate, and in its division of marital property. *Schutter v. Seibold*, 540 S.W.3d 494,

7

499 (Mo. App. W.D. 2018); *Rodieck v. Rodieck*, 265 S.W.3d 377, 380 (Mo. App. W.D. 2008). We presume that the trial court's classification of property as marital and the division of marital property are correct. *Torres*, 606 S.W.3d at 174; *Schutter*, 540 S.W.3d at 499. We will not interfere with the trial court's identification and division of marital property and debts "unless the division is so heavily weighted in favor of one party to amount to an abuse of discretion." *Reichard*, 637 S.W.3d at 575. The appellant has the burden to overcome that presumption by demonstrating that the trial court abused its discretion. *Id.* "We will find an abuse of discretion only if the ruling is 'clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.'" *Joyner v. Joyner*, 460 S.W.3d 467, 471 (Mo. App. W.D. 2015) (quoting *Bright v. Bright*, 429 S.W.3d 517, 520 (Mo. App. W.D. 2014)).

**Analysis**

Wife raises four points on appeal.[3] Wife's first point on appeal complains that the trial court committed error in concluding that half of Wife's membership interest in TCG

---

[3]Husband filed a motion to dismiss Wife's appeal which was taken with the case. Husband asserts that dismissal of Wife's appeal is appropriate because she has "enforced and accepted the validity of the very division [of property] she is challenging" on appeal. In particular, Husband claims that, by seeking "to enforce a provision in the judgment for Husband to give her a quitclaim deed to" the Lake Lotawana home that Wife purchased using the proceeds of the sale of TCG Futures and then subsequently accepting a quitclaim deed from Husband, Wife acquiesced to the Judgment so that she cannot challenge the Judgment on appeal. We disagree.

It is true that "a party may be estopped from taking an appeal by performing acts after rendition of the judgment which are clearly inconsistent with the right of appeal." *Riley v. Zoll*, 596 S.W.3d 654, 656 (Mo. App. S.D. 2020). However, Wife's post-judgment actions were not inconsistent with her right to appeal.

The Lake Lotawana home was determined to be marital property, but only because it was acquired with proceeds from the sale of TCG Futures. On appeal, the only issue is whether 50 percent of the proceeds from the sale of TCG Futures should have been treated as marital property. If Wife prevails on her claim, then all property acquired with the sale proceeds will also be deemed to be nonmarital property. If Wife does not prevail on her claim on appeal, then the trial court's award of the Lake Lotawana home to Wife will be unaffected. Because this appeal, regardless its outcome, will have no practical effect on Wife's ownership of the Lake Lotawana property, her efforts

Futures was acquired by Wife individually rather than by SLC, resulting in the erroneous conclusion that 50 percent of the sale proceeds of TCG Futures should be classified as marital property. In her second point on appeal, Wife asserts that, even if the trial court correctly found that half of the ownership interest in TCG Futures was acquired by Wife in her individual capacity during the marriage, the interest was acquired in exchange for nonmarital property so that the trial court committed error in concluding that the interest was maritial property. Wife's third point on appeal challenges the trial court's calculation of the increase in value of TCG Futures during the marriage. Wife's fourth point on appeal asserts that the trial court committed error in concluding that the increase in the value of the business during the marriage was a consequence of contributed marital efforts and assets, requiring classification of 50 percent of the proceeds from the sale of the business as marital property.[4] Because our resolution of points one and two on appeal is dispositive, we need not address points three and four.

Section 452.330.1[5] describes the two-part process a trial court must undertake to divide property and debt during a dissolution proceeding. The trial court must first "set apart to each spouse such spouse's nonmarital property." Section 452.330.1. Then the trial

---

to require Husband to perform his obligation to execute a quitclaim deed for the property does not constitute acquiescence in the Judgment sufficient to waive Wife's right of appeal.

[4]Husband asserts in his Brief that dismissal of Wife's appeal is appropriate due to rule violations, particularly Rule 84.04(d)'s prohibition against multifarious points on appeal and Rule 81.12's duty to provide a record on appeal. Wife's violations of these rules are not sufficiently material to warrant dismissal, and do not interfere with our ability to understand and consider Wife's arguments on appeal without become an advocate for her to do so. *See Deere v. Deere*, 627 S.W.3d 604, 607 (Mo. App. W.D. 2021) (noting that compliance with the rules relating the procedure in appellate courts is mandatory in order to ensure that courts do not become advocates).

All rule references are to Missouri Supreme Court Rules (2022), unless otherwise indicated.

[5]All statutory references are to RSMo 2016, as supplemented through November 24, 2019, unless otherwise indicated.

court must "divide the marital property and marital debts in such proportions as the court deems just." *Id.* As a result, nonmarital property is not subject to division in a dissolution proceeding, but the trial court must divide all marital property and debt between the spouses. *Reichard*, 637 S.W.3d at 580.

There is a statutory presumption that "all property acquired by either spouse subsequent to the marriage" is marital property. Section 452.330.2; *see also* section 452.330.3 ("All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership . . . ."). There are five statutory exceptions:

> (1) Property acquired by gift, bequest, devise, or descent;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
>
> (3) Property acquired by a spouse after a decree of legal separation;
>
> (4) Property excluded by valid written agreement of the parties; and
>
> (5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital efforts including labor, have contributed to such increases and then only to the extent of such contributions.

Section 452.330.2. To overcome the presumption that property acquired during the marriage is marital property, applicability of a statutory exception must be established by clear and convincing evidence. *S.M.S. v. J.B.S.*, 588 S.W.3d 473, 486 (Mo. App. E.D. 2019).

10

An interest in a business that is acquired by a spouse during the marriage is presumptively marital property. *Kauffman v. Kauffman*, 101 S.W.3d 35, 43 (Mo. App. W.D. 2003). Wife concedes that the transactions that resulted in SLC acquiring GRM's membership interest in Cooper-Moeller, in changing the name of Cooper-Moeller to TCG Futures, and in simplifying the ownership structure of TCG Futures such that Wife became the sole owner of TCG Futures, all occurred during the marriage. Wife's first and second points on appeal argue, however, that the 50 percent interest in Cooper-Moeller acquired from GRM was not marital property because SLC, and not Wife, acquired the interest (point one on appeal), and because in any event, the interest was acquired with nonmarital funds (point two on appeal).

With respect to the first point on appeal, Wife argues that the Transfer Agreement plainly provided that SLC, a corporate entity, acquired GRM's one-half membership interest in Cooper-Moeller so that all the proceeds of the subsequent sale of TCG Futures' assets to Veritext constituted nonmarital property. Wife thus argues that it was error for the trial court to conclude, as it did in the Judgment, that after the marriage, "[Wife] acquired Glenda Moeller's one-half interest" in Cooper-Moeller (which was then renamed as TCG Futures) because this finding disregarded the corporate structures of SLC and GRM.

It is true that the Judgment makes no findings with respect to SLC or GRM, and includes no substantive mention of either corporate entity. However, neither Wife nor Husband requested findings of fact or conclusions of law in accordance with Rule 73.01(c). Thus, "when the trial court has made no specific findings on a factual issue, such findings

11

are interpreted as having been found in accordance with the trial court's judgment.") *Le v. Le*, 638 S.W.3d 583, 595 (Mo. App. E.D. 2021) (quoting *Sulkin v. Sulkin*, 619 S.W.3d 155, 160 (Mo. App. E.D. 2021)).

The Transfer Agreement required SLC to acquire GRM's membership interest in Cooper-Moeller. The evidence at trial established that Cooper-Moeller issued the check to GRM to pay the $30,000 purchase price for the transferred membership interest. However, Wife's expert witness explained that after GRM's membership interest was acquired, Cooper-Moeller could no longer be treated as a partnership for tax purposes because it had only one member. As a result, contemporaneous with SLC's acquisition of GRM's interest in Cooper-Moeller, the business name was changed to TCG Futures, TCG Futures elected to be taxed as an S-corporation, and Wife "simplified the ownership structure" of TCG Futures by exchanging her 100 percent interest in SLC for SLC's 100 percent interest in TCG Futures. Stated simply, regardless the terms of the Transfer Agreement, as a result of near simultaneous transactions that took place, or were effective, on and around April 14, 2017, SLC no longer held an interest in TCG Futures, Wife no longer held an interest in SLC, and Wife became the 100 percent owner of TCG Futures.

In light of this evidence, we cannot find that the trial court abused its discretion when it concluded that Wife owned TCG Futures, including a 50 percent interest acquired during the marriage. As such, the trial court did not abuse its discretion in concluding that 50 percent of the proceeds of the sale of TCG Futures were marital property. Wife's first point on appeal is denied.

Wife's second point on appeal argues that even if it was not error for the trial court to find that she owned TCG Futures individually, it was error to find that the 50 percent interest she acquired during the marriage was marital property because that interest was acquired with nonmarital property. Wife relies on the statutory exception set forth in section 452.330.2(2) in an effort to defeat the presumption that property acquired during the marriage is marital property. Wife has not sustained her burden to establish this exception by clear and convincing evidence.

The trial court found that when Moeller's interest in the parties' business was acquired, Wife "assumed over $200,000 in liabilities on behalf" of the business. Wife does not challenge this finding, which is supported by the evidence. The Transfer Agreement not only required GRM to be paid $30,000 for its membership interest, but also obligated SLC to cause Cornerstone Bank, the holder of a $175,000 line of credit to Cooper-Moeller, to fully release GRM and Moeller from all obligations related to the line of credit. The release from this debt obligation was additional consideration for the transfer of GRM's membership interest to SLC. To provide this consideration, a Release of Guarantor agreement was executed by Moeller, Cooper-Moeller, Wife, and Cornerstone Bank. The Release of Guarantor agreement expressly identified Wife as the "Remaining Guarantor," confirming that the obligation to ensure payment of Cooper-Moeller's indebtedness to Cornerstone Bank became solely Wife's to bear after SLC acquired GRM's membership interest. In addition, pursuant to the terms of the Transfer Agreement, SLC *and* Wife agreed to indemnify GRM and Moeller as to "any obligation or liability, whether accrued,

13

absolute, contingent or otherwise, of [SLC] or [Cooper-Moeller] which is not expressly assumed by [GRM] pursuant to the terms of" the Transfer Agreement.

Wife's contention, therefore, that the interest held by GRM in Cooper-Moeller was acquired solely by nonmarital property is not supported by the record. Wife's assumption of new debt and/or of sole responsibility for guaranteed debt was a marital obligation. *See Reichard*, 637 S.W.3d at 582 ("[T]he phrase 'marital debts' encompasses all debts incurred during the marriage, either jointly or separately," and "[t]he fact that a spouse does not control or participate in the decision to make a particular debt does not preclude allocation of that debt to the non-participating spouse.") (quoting *Rogers v. Rogers*, 253 S.W.3d 134, 138 (Mo. App. W.D. 2008); *In re Marriage of Pahlow*, 39 S.W.3d 87, 92 (Mo. App. S.D. 2001)). Wife's willingness to burden the marriage with additional debt in partial consideration for acquisition of the 50 percent interest held by GRM in Cooper-Moeller is inconsistent with Wife's contention that said interest was exclusively acquired with nonmarital property.

This conclusion is reinforced by the fact that Wife acquired SLC's 100 percent interest in TCG Futures (f/k/a Cooper-Moeller) simultaneously after SLC acquired GRM's interest in Cooper-Moeller. SLC used Cooper-Moeller property to buy GRM's interest in the company, then immediately ceased to exist in an exchange that left Wife as the sole owner of TCG Futures. While the trial court could arguably trace 50 percent of Wife's ownership interest in TCG Futures to Wife's prior interest in SLC when SLC was a 50 percent member in Cooper-Moeller, the trial court did not abuse its discretion in refusing

14

to do so with respect to the additional 50 percent interest in TCG Futures Wife acquired from SLC in April 2017 for the stated purpose of "simplifying ownership."

The trial court did not abuse its discretion in rejecting's Wife's contention that the 50 percent ownership in TCG Futures acquired during the marriage was acquired with nonmarital property. As such, the trial court did not abuse its discretion in classifying half of the proceeds of the sale of TCG Futures as marital property.[6] Wife's second point on appeal is denied.

Wife's third and fourth points on appeal concern the Judgment's findings about the increase in value of TCG Futures during the marriage, and about how that increase was a result of the contributions of Wife's and Husband's labor. These findings are relevant to the statutory exception to presuming property acquired during the marriage is marital that provides as follows:

> The increase in value of property prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

Section 452.330.2(5). By its plain terms, this exception only applies to nonmarital property that has increased in value during the marriage. Because the trial court did not abuse its discretion in finding that 50 percent of the interest in TCG Futures was marital property,

---

[6]We acknowledge the general rule that a corporation's assets belong to the corporation so that, in a dissolution proceeding, "a court may not exercise control over property belonging to a non-party, including a corporation, even if one of the spouses is the sole shareholder." *Hughes v. Hughes*, 247 S.W.3d 59, 61 (Mo. App. W.D. 2008) (quoting *Comninellis v. Comninellis*, 99 S.W.3d 502, 512 (Mo. App. W.D. 2003)). However, Wife's interest in the corporation itself was liquidated upon the sale of its assets to Veritext and therefore subject to division if classified as marital property.

15

the trial court's alternative findings that presume to the contrary need not be addressed.

Wife's third and fourth points on appeal are denied as moot.

## Conclusion

The Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur