

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| MARK RANDALL EDWARDS, | ) | |
| Respondent, | ) | |
| v. | ) | WD78472 |
| | ) | |
| DEBBIE L. EDWARDS, | ) | FILED: November 24, 2015 |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
#### THE HONORABLE ROBERT D. SCHOLLMEYER, JUDGE

### BEFORE DIVISION TWO: MARK D. PFEIFFER, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND JAMES E. WELSH, JUDGES

Debbie Edwards (Mother) appeals from the circuit court's judgment dissolving her marriage to Mark Edwards (Father). Mother challenges the child support and maintenance awards and the court's denial of her request for attorney's fees. For reasons explained herein, we reverse the child support award and remand for the circuit court to recalculate the award. The judgment is affirmed in all other respects.

### FACTUAL AND PROCEDURAL HISTORY

Mother and Father were married in September 1994 and separated in December 2013, after Father filed a petition for dissolution of marriage. During

their marriage, they had two sons: Cameron, who was 19 years old at the time of trial, and Conner, who was 14 years old.

In his dissolution petition, Father requested, among other things, joint legal and physical custody of the children, with Conner residing with Father and Mother having custody of him every other week from Thursday to Monday and, on weeks where Mother does not have weekend custody, Thursday nights. Father asked that the court award a reasonable amount of child support. Mother filed a counter-petition in which she also sought joint legal and physical custody. She requested, however, that Conner reside with her and that Father have custody every other week from Thursday to Monday and, on weeks where Father does not have weekend custody, Thursday nights.[1] Additionally, Mother asked for an award of child support, maintenance, and attorney's fees.

While the case was pending, the court entered a temporary order regarding custody of Conner, child support for both children, and maintenance in May 2014. The order provided that the parties were to exercise joint physical custody of Conner. Conner was to reside with Mother on Mondays and Tuesdays of each week and Father on Wednesdays and Thursdays of each week. The parties were to alternate weekends. The court ordered Father to pay Mother $184 in temporary child support each month. Lastly, the court ordered Father to pay Mother $500 in temporary maintenance.

---

[1] Because Cameron was going to be attending college, neither party included him in their proposed residential and visitation schedules.

Trial was held on the parties' petitions in October 2014. The evidence at trial was that Mother, who does not have a high school diploma, had worked various jobs during the marriage. Before she had children, Mother was employed full time at a hospital. After having children, she ran an in-home daycare. For the past ten years, Mother has been self-employed cleaning offices and private homes on a part-time basis. Mother's average monthly income gross income from her part-time cleaning business is $2000. Her monthly expenses, not including expenses related to Conner and Cameron, are $2388.

Mother lives in a rental house near Father's residence. Cameron lives with her while he is attending college. In addition to Cameron, Mother's adult daughter from a previous relationship, Cara, lives with her. Cara, who is 23 years old, is a full-time student and does not contribute to the rent or other living expenses, except for the monthly satellite television bill. Mother allows Cara access to Mother's bank account and allows her to use the account to pay for gas or other expenses she may have.

Father is employed full time by the Jefferson City Police Department. His gross monthly income is $5066. His monthly expenses, not including expenses related to the children, are $1948. Father pays for the cost of the children's health insurance, which is $145 per month. Additionally, Father pays for every expense of Conner's that he is made aware of, makes Cameron's car payments, pays for Cameron's car insurance and cell phone, and gives Cameron cash.

The evidence at trial indicated that the parties had not followed the court's temporary custody schedule regarding Conner. In fact, between May and October 2014, Conner had spent only two overnights at Mother's house. Conner did, however, spend most weekday afternoons after school with Mother. Conner was diagnosed with argumentative defiance disorder and depression and has a history of anger management issues. According to Father, Conner chose not to stay with Mother during her designated parenting time.

The court subsequently entered a judgment, which it later amended, dissolving the parties' marriage and dividing their property pursuant to their agreement. The court awarded the parties joint legal and physical custody of Cameron and Conner. The court rejected Mother's and Father's proposed parenting plans regarding Conner and entered its own parenting plan, which provided for Conner to reside with Mother every week from Wednesday at 3:00 p.m. until Friday at 3:00 p.m. and every other weekend. Conner is to reside with Father at all other times.

As for child support for Cameron and Conner, the court rejected the parties' proposed Form 14s and calculated child support using a dual Form 14 computation. The court rebutted the presumed correct child support amount of $172 per month and ordered Father to pay Mother $184 per month.

On the issue of maintenance, the court found that, pursuant to the parties' property agreement, Mother would receive her vehicle, $70,000 of Father's 457 account, and $1000 per month of Father's pension when Father retires. The court

4

further found that Mother would be able to support herself through appropriate employment. The court noted that Mother allows her adult daughter to live with her and that her daughter does not contribute toward rent or most of the utilities. The court concluded that, "Clearly, [Mother] is able to financially support herself if she is also able to help support her adult child." Despite finding that Mother is able to support herself, the court found that Mother's current self-employment does not offer the stability and benefits that regular employment would. Because Mother would no longer be covered under Father's health insurance, the court awarded Mother $350 per month in temporary, non-modifiable maintenance for 19 months to allow her time to find "appropriate employment."

Lastly, the court denied Mother's request for attorney's fees, finding that neither party's conduct during the marriage or the pendency of the case increased the other's attorney's fees and that the parties have the financial resources to pay their own fees. Mother appeals.

## STANDARD OF REVIEW

Appellate review of a dissolution judgment is under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Jenkins v. Jenkins*, 368 S.W.3d 363, 366 (Mo. App. 2012). We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. at 366-67. The party challenging the dissolution judgment has the burden of demonstrating error. *Shaw v. Shaw*, 413 S.W.3d 332, 334 (Mo. App. 2013). We view the evidence and any

5

reasonable inferences therefrom in the light most favorable to the court's decision and disregard all contrary evidence and inferences. *Id*. We recognize that the circuit court was "'free to believe or disbelieve all, part, or none of the testimony of any witness.'" *Id*. (citation omitted).

## ANALYSIS

### *Child Support*

In Point I, Mother contends the circuit court erred in determining child support because it failed to properly adhere to the guidelines set forth in Rule 88.01. Specifically, Mother argues that the court incorrectly calculated the child support award by using the procedure for a split-custody arrangement. We agree with Mother that the court's child support calculation is erroneous and requires reversal.

To determine child support, Section 452.340, RSMo,[2] and Rule 88.01 mandate the use of the Form 14 guidelines. *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo. App. 1996). The circuit court must first calculate the presumed correct child support amount pursuant to Form 14, either by accepting one of the parties' proposed calculations, or by rejecting the parties proposed Form 14s and preparing its own. *Roberts v. Roberts*, 391 S.W.3d 921, 922 (Mo. App. 2013). The court then must consider whether to rebut the presumed correct child support amount as unjust or inappropriate after considering all relevant circumstances. *Id*. at 922-23.

---

[2] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

6

In its judgment, the court stated that it was rejecting the parties' proposed Form 14s and preparing its own Form 14s "based upon a split custody in that Cameron resides predominantly with [Mother] and Conner resides predominantly with [Father], thus the presumed correct child support amount payable to [Mother] is $172 per month." The court's Form 14s indicate that the court arrived at $172 by subtracting $250, the presumed correct child support amount that Mother would owe for Conner, from $422, the presumed correct child support amount that Father would owe for Cameron. The court then rebutted the $172, finding that, based on "the situation of both parties and the minor children at the present time," it would be reasonable for Father to pay Mother $184 per month.

This method of calculating dual Form 14s for each parent and subtracting the smaller amount from the larger amount is used in split-custody arrangements and is discussed in Comment D to Line 12 in the *Directions, Comments for Use and Examples for Completion of Form No. 14*, which provides:

> Split custody refers to the situation in which one or more, but not all, of the children primarily resides with each of the parents. In those instances, a separate Form No. 14 is completed for the number of children primarily residing in the custody of each parent, using the adjusted monthly gross income (line 3) for both parents but disregarding the children primarily residing in the other parent's custody.
>
> . . . .
>
> After completion of each parent's Form No. 14, subtract the smaller amount from the greater, and the parent with the larger of the two obligations shall pay the difference between the two obligations.

"Missouri courts have consistently held that split-custody situations are the *only* times that the dual Form 14 calculations are appropriate." *Roberts*, 391 S.W.3d at 923. This procedure is not to be used to calculate child support where the court orders the parties to share joint physical custody of the children. *Id*. at 923-24. *See also Derks v. Surface*, 189 S.W.3d 692, 696 (Mo. App. 2006), and *Stuckmeyer v. Stuckmeyer*, 117 S.W.3d 687, 691 (Mo. App. 2003).

Here, the court awarded the parties joint physical custody of Cameron and Conner, made no parenting time schedule for Cameron, and set out a parenting schedule for Conner that gives Mother and Father equal parenting time with him. The court acknowledged in its judgment that the parties had not followed the equal parenting time schedule in the temporary custody order but stated, "Regardless, this Court believes that it is up to the parents to enforce a custody schedule that provides that Conner have frequent, meaningful contact with both parents." Thus, the court found that its parenting plan, which provides "an equal custody schedule for Conner," is in Conner's best interest.

Because the court awarded Mother and Father joint physical custody of both children and ordered a parenting plan that provided for equal parenting time with Conner, the court erred in calculating child support using the method applicable only to split-custody arrangements. *See Roberts*, 391 S.W.3d at 924. The child support award is reversed, and the cause is remanded to the circuit court to recalculate the presumed correct child support amount consistently with the joint physical custody award that the court ordered. After determining whether to rebut

8

the presumed correct child support amount as unjust or inappropriate, the court must then consider all factors set forth in Section 452.340 and enter its child support award accordingly. *Id*. This court is fully aware that, after recalculating the Form 14 pursuant to the instructions, the circuit court is free to reject that and enter an award it considers just. However, a properly calculated Form 14 is a necessary prerequisite to that decision. Point I is granted.

***Maintenance***

In Point II, Mother contends the circuit court erred in placing a termination date on the maintenance award. She argues that, instead of limiting the maintenance award to only 19 months, the court should have made the award indefinite, as there was no evidence in the record of an impending change of circumstances for either party.

The circuit court has broad discretion in determining the duration of maintenance, and we review that decision only for an abuse of discretion. *In re Marriage of McMillian*, 399 S.W.3d 838, 840 (Mo. App. 2013). "There is a judicial preference for awards of maintenance of unlimited duration." *McIntosh v. McIntosh*, 41 S.W.3d 60, 72 (Mo. App. 2001). The circuit court "'should not prospectively terminate maintenance if no evidence is presented or no reasonable expectation exists that the circumstances of the parties will be substantially different in the future.'" *McMillian*, 399 S.W.3d at 841 (quoting *Underwood v. Underwood*, 163 S.W.3d 490, 492 (Mo. App. 2005)). Consequently, in cases such as *Keller v. Keller*, 18 S.W.3d 589, 595-96 (Mo. App. 2000), relied upon by

9

Mother, we reversed the court's limitation on the duration of the maintenance award, as there was no substantial evidence to support the court's finding that the appellant would be totally self-supporting after 18 months of "additional training."

The distinction between *Keller* and this case, however, is that, when the court entered its award in *Keller*, the party receiving maintenance was not employed and was not capable of supporting herself without the maintenance payment. *Id*. at 594. Here, the court's findings indicate that, *at the time the judgment was entered*, Mother was, in fact, able to support herself through her employment and the property awarded to her. Indeed, Mother was also able to support her adult daughter. Mother's bank records indicated that she had money left over at the end of each month, and she admitted that she cashed some of her paychecks instead of depositing them into her checking account. Mother did not meet Section 452.335.1's threshold requirements for an award of maintenance.[3] Nevertheless, the court awarded her temporary maintenance to allow her time to find employment so that she could obtain health insurance, as she would no longer be eligible for coverage under Father's plan. Given that Mother was working only part time, it was not unreasonable for the court to allow her time either to find different employment with health insurance benefits or to increase her cleaning clientele so that she would be able to purchase her own health insurance.[4] "[I]t is

---

[3] Father acknowledges that he did not appeal the court's decision to award maintenance to Mother, and he states that he has made all maintenance payments as ordered.

[4] Although Mother testified that she has Scleroderma and Raynaud's Syndrome, she admitted that neither condition interferes with her ability to perform her current cleaning jobs. There was no

10

not unreasonable for a trial court, having found that a party is capable of earning more than they are earning at the time of the dissolution, to allow a period of time with some financial cushion while that party moves toward their earning potential." *McIntosh*, 41 S.W.3d at 72. The circuit court did not abuse its discretion in limiting the award of maintenance to 19 months. Point II is denied.

### Attorney's Fees

In Point III, Mother contends the circuit court erred in denying her request for attorney's fees. She argues that the income disparity between her and Father warrants an award of attorney's fees to her. She notes that Father earns $5066 per month, while she earns only approximately $2000 per month.

"Parties to a domestic relations case are generally responsible for paying their own attorney's fees." *Goins v. Goins*, 406 S.W.3d 886, 891 (Mo. banc 2013). Section 452.355.1, however, authorizes the circuit court to award attorney's fees "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." The court has broad discretion to decide whether to award attorney's fees, and we will not disturb the court's order absent an abuse of discretion. *Reiter v. Reiter*, 372 S.W.3d 899, 905 (Mo. App. 2012). "The complaining party has the burden to show an abuse of discretion by demonstrating that the award is clearly against the logic of the circumstances and

---

evidence that these conditions would affect her ability to perform additional cleaning jobs or to obtain employment that would enable her to get health insurance.

11

so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful deliberation on the matter." *Id*.

In this case, the court specifically stated that it considered the parties' financial resources in denying Mother's request for attorney's fees. The court determined that Mother was able to support herself through her employment and the property awarded to her, which included $70,000 from Father's 457 account that she would receive as soon as the division of benefits order was signed and submitted to Father's retirement administrator. The court also awarded Mother temporary maintenance of $350 per month for 19 months. Under these circumstances, the income disparity between Mother and Father was not a sufficient reason to award her attorney's fees. "'[T]he fact that one spouse's income is greater than the other's does not compel an award of attorney's fees.'" *Id*. at 906 (citation omitted). The circuit court did not abuse its discretion in denying Mother's request for attorney's fees. Point III is denied.

### CONCLUSION

The child support award is reversed and remanded. The judgment is affirmed in all other respects.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.