In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

DANIELLE M. SCHABERG, ) No. ED109200
 )
 Respondent, ) Appeal from the Circuit Court
 ) of St. Louis County
vs. )
 ) Honorable Joseph L. Green
JAMIE E. SCHABERG, )
 )
 Appellant. ) FILED: November 2, 2021

 Introduction

 Jamie E. Schaberg (“Jamie”)1 appeals from the trial court’s judgment dissolving her

marriage from Danielle M. Schaberg (“Danielle”), dividing marital property, awarding sole legal

and joint physical custody of Jamie’s biological child (“Daughter”) born during her marriage to

Danielle, and ordering child support. Jamie raises four points on appeal. Jamie first challenges

the trial court’s authority to enter any judgment relating to parental custody and child support.

Jamie argues Danielle lacked standing to seek any court order pertaining to custody and support

of Daughter because Danielle is not a presumed parent under Section 210.8222 and did not adopt

Daughter during their marriage. Jamie also contends the trial court erred in failing to correctly

divide all marital debt incurred by Jamie and Danielle during their marriage, entered an

1
 To avoid confusion, we identify the parties by their first names as they did in their briefs. No familiarity or
disrespect is intended.
2
 All Section references are to RSMo (2016), unless otherwise indicated.
inconsistent and unenforceable judgment by awarding Danielle sole legal custody of Daughter

but requiring Danielle to confer with Jamie before making any final decisions, and improperly

calculated childcare costs resulting in an erroneous order of child support. Danielle and Jamie’s

same-sex marriage does not deprive Danielle of her statutory standing as the presumed and

undisputed natural parent of Daughter, who was born during the marriage. Accordingly, the trial

court acted within its authority when entering its judgment on custody and support issues relating

to Daughter. Jamie did not preserve for appeal her points relating to the division of marital debt

and the award of sole legal custody due to an inconsistent and unenforceable judgment and we

therefore deny these points. Lastly, because the trial court correctly determined that the cost of

attending daycare was a work-related childcare expense, we deny Jamie’s final point on appeal.

Accordingly, we affirm the trial court’s judgment.

 Factual and Procedural History

 Jamie and Danielle, both women, married on January 21, 2017. One child, Daughter,

was born during the marriage on April 2, 2017. Long before they were married, Jamie and

Danielle talked about raising a family and specifically discussed having a baby together. Both

Jamie and Danielle agreed that Jamie would be the biological mother of the child via in vitro

fertilization using a sperm donor selected by both Jamie and Danielle.

 Danielle petitioned for dissolution of marriage in April 2018. Jamie counter-petitioned

for dissolution in July 2018. In her amended petition, Danielle requested sole legal and sole

physical custody of Daughter. Jamie sought joint legal and joint physical custody of Daughter.

 During dissolution proceedings, Domestic Relations Services (“DRS”) advised the trial

court to appoint a guardian ad litem (“GAL”) for Daughter and recommended that Jamie and

Danielle be referred for psychological evaluations due to their conflicting accounts of Jamie’s

past abuse and medical conditions. The spouses consented to the evaluations and the trial court
 2
appointed a GAL to represent Daughter. Both spouses submitted separate proposed parenting

plans. The GAL also submitted a proposed parenting plan.

 Following trial, the trial court issued its final judgment (“Judgment”) dissolving the

marriage between Danielle and Jamie, dividing property, awarding custody of Daughter, and

ordering child support.

 Based on the evidence at trial, the trial court awarded sole legal custody of Daughter to

Danielle, but awarded joint physical custody of Daughter to both Jamie and Danielle. The trial

court adopted the GAL’s parenting plan, which it attached to the Judgment. The parenting plan

provides for sole legal custody of Daughter to Danielle, and further states that “[m]ajor decisions

affecting the child shall be made by Danielle: however, she shall confer with Jamie prior to

making any final decisions regarding the minor child’s health and welfare.” As stated in the

parenting plan, the trial court determined that granting Danielle sole legal custody was in the best

interests of Daughter.

 In dissolving property between the spouses, the division of Danielle’s deferred

compensation retirement plan (the “Plan”) is relevant on appeal. The trial court awarded Jamie

half of the marital portion of Danielle’s vested account balance in the Plan as of the date of the

Judgment. The trial court ordered that the Plan’s administrator exclude any premarital

contributions by Danielle for the purpose of determining the marital portion. The trial court also

ordered that any increase in value of the account from the date of marriage to the date of the

entry of Judgment be included when calculating the marital interest. The trial court awarded

Danielle the remaining balance of the marital portion of her vested account balance in the Plan,

less Jamie’s half of the marital portion. At the time of the trial, Danielle’s total interest in the

Plan was $25,875. During litigation, Danielle borrowed $10,000 against the plan for payment of

 3
living expenses, childcare and attorneys’ fees, reducing the benefits in the Plan to $15,875. The

Plan’s balance before Jamie and Danielle’s marriage was $11,213, and the trial court calculated

that $4,661 was accumulated during the marriage. The Judgment did not otherwise refer to

Danielle’s $10,000 loan taken against the Plan.

 The trial court also awarded child support. In determining the amount of child support,

the trial court considered the parties’ wages and expenses as reported at trial in their submitted

Form 14s.3 The trial court rejected both spouses’ proposed Form 14s and prepared its own.

 Danielle’s gross wages at the time of the trial were $5,273 per month. Jamie was earning

$23.52 an hour, resulting in gross earnings of $4,076 per month. Daughter attends work-related

childcare three to five days per week at a cost of approximately $1,063 per month. At trial,

Danielle affirmed that the $1063 per month “tuition” attributed to Daughter’s daycare was

“really work-related childcare” for Daughter. Jamie did not object to Danielle’s testimony

regarding the work-related childcare costs. However, in her post-trial motion, Jamie argued that

the childcare costs should have been excluded from the trial court’s child-support calculations.

 The Judgment ordered child support paid by Jamie to Danielle for Daughter in the

amount of $414 per month. In determining the amount of child support, the trial court attributed

$1063 per month as the reasonable work-related childcare costs of Daughter paid by Danielle.

 Jamie filed a post-trial motion to amend the Judgment. Relevant to this appeal, Jamie’s

post-trial motion challenged the trial court’s award of sole legal custody to Danielle and the cost

of Daughter’s daycare relevant to the award of child support. Jamie’s post-trial motions were

denied by law ninety days after filing pursuant to Rule 81.05.4 Jamie now appeals.

3
 Form 14 is promulgated by the Supreme Court of Missouri under Rule 88.01.
4
 All Rule references are to Mo. R. Civ. P. (2020), unless otherwise indicated.

 4
 Points on Appeal

 Jamie raises four points on appeal. At the outset, Jamie contests the trial court’s authority

to entertain any requests made by Danielle relating to custody or support of Daughter because

she, and not Danielle, was Daughter’s parent. Specifically, Jamie argues that she is the

biological mother of Daughter, and that Danielle lacks standing to raise issues relating to custody

and support of Daughter because Danielle is not Daughter’s biological parent, is not a presumed

natural parent of Daughter under Section 210.822, and Danielle never adopted Daughter during

their marriage. In her second Point on Appeal, Jamie argues that the trial court erroneously

divided the marital debt incurred by the parties during their marriage because the trial court

disregarded a $10,000 loan Danielle took against her deferred compensation retirement plan

during the litigation. In Point Three, Jamie maintains the trial court erred in issuing an

inconsistent judgment which awarded Danielle sole legal custody of Daughter but also required

Danielle to confer with Jamie before making any final decisions regarding legal custody issues.

In her final point, Jamie contends that the trial court erred by ordering Jamie to pay Danielle

$414 per month for child support because the trial court included Daughter’s daycare as a “work-

related childcare expense” when the childcare expense was in fact “tuition” that should have

been excluded from the trial court’s child-support calculations.

 Standard of Review

 In appeals from a dissolution of marriage, we must determine whether the trial court’s

judgment is unsupported by substantial evidence, against the weight of the evidence, erroneously

declares the law, or erroneously applies the law. Lollar v. Lollar, 609 S.W.3d 41, 45–46 (Mo.

banc 2020) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)).

 We view the evidence and the permissible inferences in the light most favorable to the

judgment, disregarding all contrary evidence and giving deference to the trial court. Schuman v.

 5
Schuman, 612 S.W.3d 232, 235 (Mo. App. W.D. 2020) (citing Blomenkamp v. Blomenkamp,

462 S.W.3d 429, 432 (Mo. App. W.D. 2015)); Mehra v. Mehra, 819 S.W.2d 351, 353 (Mo. banc

1991). If the trial court did not make a finding on a specific issue of fact, we will consider it “as

having been found in accordance with the result reached.” Rule 73.01(c); A.O. v. V.O., 593

S.W.3d 130, 135 (Mo. App. E.D. 2020).

 The trial court is “free to believe or disbelieve all, part, or none of the testimony of any

witness.” Schutter v. Seibold, 540 S.W.3d 494, 499 (Mo. App. W.D. 2018) (quoting Shaw v.

Shaw, 413 S.W.3d 332, 334 (Mo. App. W.D. 2013)). The trial court is in a superior position to

judge the credibility of witnesses, as well as their character, sincerity, and other intangibles that

might not be completely revealed by the record. White v. White, 616 S.W.3d 373, 379 (Mo.

App. E.D. 2020) (internal citation omitted). Unless we are firmly convinced the judgment is

erroneous and against the child’s best interests, we will not disturb the trial court’s judgment.

Morgan v. Morgan, 497 S.W.3d 359, 363 (Mo. App. E.D. 2016) (quoting Bather v. Bather, 170

S.W.3d 487, 492 (Mo. App. W.D. 2005)).

 However, we review all issues of statutory interpretation de novo without deference to

the trial court. D.E.G. v. Juv. Officer of Jackson Cnty., 601 S.W.3d 212, 216 (Mo. banc 2020)

(internal citation omitted).

 Discussion

I. Point One—Standing

 A. Preservation

 Jamie asserts Danielle’s lack of standing to raise issues of custody and support for the

first time on appeal. Danielle contends that Jamie failed to preserve the issue of standing for

appeal because she never challenged Danielle’s standing before the trial court, and urges us to

dismiss this point.

 6
 Rule 84.04(e) requires an appellant to include for each claim of error “a concise statement

describing whether the error was preserved for appellate review [and] if so, how it was

preserved[.]” Rule 84.04(e); Marck Indus., Inc. v. Lowe, 587 S.W.3d 737, 745 (Mo. App. S.D.

2019). Failure to comply with Rule 84.04(e) can impede appellate review of the trial court’s

judgment and thereby fail to preserve any issue for review. Lowe, 587 S.W.3d at 745 (citing

Regions Bank v. Davis, 521 S.W.3d 283, 287 (Mo. App. S.D. 2017)). Generally, we will not

convict a trial court of error that it was given no opportunity to correct. See 39 Bell LLC v.

K&K, 584 S.W.3d 823, 828 (Mo. App. W.D. 2019) (quoting Brown v. Brown, 423 S.W.3d 784,

787 (Mo. banc 2014)) (“It is well recognized that a party should not be entitled on appeal to

claim error on the part of the trial court when the party did not call attention to the error at trial

and did not give the court the opportunity to rule on the question.”).

 Moreover, under the doctrine of self-invited error, “[a] party cannot complain on appeal

about an alleged error in which that party joined or acquiesced at trial.” Mo. Ozarks Radio,

Network, Inc. v. Baugh, 598 S.W.3d 154, 166 (Mo. App. S.D. 2020) (quoting Bowers v. Bowers,

543 S.W.3d 608, 615 (Mo. banc 2018)); see also Johnson v. State, 189 S.W.3d 640, 647 (Mo.

App. W.D. 2006) (internal citations omitted) (“By affirmatively stating that he did not have any

objection . . . the appellant [ ] waived any appellate review for preserved error of this issue.”).

 However, certain issues impacting our authority to hear an appeal may not be waived and

need not be preserved at the trial level. Fundamental to our judicial system, we must sua sponte

ensure the proper jurisdiction and justiciability over a case, even when such issues are raised for

the first time on appeal or not raised by the parties at all. See Rule 84.13(a) (excepting

“questions of jurisdiction” from preservation requirements for appeals from bench-tried

cases); Eaton v. Doe, 563 S.W.3d 745, 747 (Mo. App. E.D. 2018) (citing Schweich v. Nixon,

 7
408 S.W.3d 769, 774 n.5 (Mo. banc 2013)). Missouri courts have recognized that “[s]ubsequent

to the Missouri Supreme Court’s decision in J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249

(Mo. banc 2009), there may be some question whether a plaintiff’s lack of standing implicates

the trial court’s subject-matter jurisdiction.” Unifund CCR Partners v. Kinnamon, 384 S.W.3d

703, 707 n.3 (Mo. App. W.D. 2012) (citing Borges v. Mo. Pub. Entity Risk Mgmt. Fund, 358

S.W.3d 177, 183 (Mo. App. W.D. 2012)). However, our Supreme Court later clarified that

“[c]ourts have a duty to determine if a party has standing prior to addressing the substantive

issues of the case,” and that, “[f]or this reason, standing cannot be waived.” CACH, LLC v.

Askew, 358 S.W.3d 58, 61 (Mo. banc 2012) (emphasis added) (citing Farmer v. Kinder, 89

S.W.3d 447, 451 (Mo. banc 2002)). Because standing relates to the court’s authority to render a

judgment, standing cannot be waived. Eaton, 563 S.W.3d at 747 (citing Pub. Commc'ns Servs.,

Inc. v. Simmons, 409 S.W.3d 538, 546 n.3 (Mo. App. W.D. 2013)); In re J.D.S., 482 S.W.3d

431, 438 (Mo. App. W.D. 2016) (internal citation omitted); see also S.C. v. Juv. Officer, 474

S.W.3d 160, 162–63 (Mo. banc 2015) (“Standing cannot be waived.”); Stephens Cemetery, Est.

1864, Inc. v. Tyler, 579 S.W.3d 299, 305 (Mo. App. E.D. 2019) (internal citation omitted)

(“Where a party lacks standing, the trial court has no jurisdiction to grant the requested

relief.”). Standing evaluates the sufficiency of a plaintiff's interest in the subject of the lawsuit

and helps to “ascertain if a party is sufficiently affected by the conduct complained of in the suit,

so as to ensure that a justiciable controversy is before the court.” In re J.D.S., 482 S.W.3d at

438. Thus, our courts have long recognized that “absence of standing may be asserted for the

first time on appeal.” Roedder v. Callis, 375 S.W.3d 824, 826 n.2 (Mo. App. E.D. 2012) (citing

In Their Representative Capacity as Trs. for the Indian Springs Owners Ass’n v. Greeves, 277

S.W.3d 793, 797–98 (Mo. App. E.D. 2009)).

 8
 Danielle correctly notes that Jamie raises the issue of standing for the first time on appeal.

The record shows that Jamie did not challenge Danielle’s standing either at trial or in her post-

trial motions. Normally, we will not allow a claim of error to be raised on appeal if it was not

first presented to the trial court. See 39 Bell LLC, 584 S.W.3d at 828 (quoting Brown, 423

S.W.3d at 787). And Jaime’s conduct at trial far exceeds the mere failure to raise the issue of

standing. Indeed, the record shows that Jamie invited any error regarding Danielle’s standing to

seek custody of Daughter. Specifically, Jamie invited the trial court to acknowledge Danielle’s

standing to assert a right of custody when Jamie requested the trial court grant joint custody of

Daughter to her and Danielle in her counter-petition for dissolution of marriage and allowed the

trial to proceed without otherwise challenging Danielle’s standing. See Baugh, 598 S.W.3d at

166 (quoting Bowers, 543 S.W.3d at 615). Invited error is a well-recognized ground for

dismissing an appeal where a party proactively asserts a lack of objection or complains on appeal

of errors introduced by that party’s own evidence and argument. See Davis v. Davis, 582

S.W.3d 100, 106 (Mo. App. W.D. 2019) (dismissing an appeal from a dissolution property

division under the “invited error” principle because the appellant affirmatively stated that she did

not object to the proposed property division). Jamie invited the trial court to award joint custody

and only now complains of Danielle’s lack of standing because she is not satisfied with the trial

court’s judgment. We normally would reject Jamie’s point on appeal because she did not object

to Danielle’s standing to assert parental rights over Daughter before the trial court. But as noted

above, Missouri caselaw dictates that standing cannot be waived by the parties or by a failure to

properly preserve the issue. CACH, 358 S.W.3d at 61 (citing Farmer, 89 S.W.3d at 451).

Notably, we find no authority indicating that the doctrine of invited error qualifies as an

 9
exception that would allow a party to consent to a lack of standing or waive any other issue

regarding justiciability.

 Jamie’s claim is one of standing. Accordingly, we have a duty to determine if Danielle

has standing to assert her claims before addressing the substantive issues of the case. Id. This

duty cannot be waived by the parties or by a failure of the parties to properly preserve the issue

for appeal. Eaton, 563 S.W.3d at 747 (citing Pub. Commc'ns Servs., 409 S.W.3d at 546 n.3). If

Danielle lacks standing, then the trial court had no authority to grant Danielle relief as to custody

or child support. Tyler, 579 S.W.3d at 305. Despite Jaime’s failure to challenge Danielle’s

standing during trial, we are obligated to address the issue since standing may be asserted for the

first time on appeal. Roedder, 375 S.W.3d at 826 n.2 (citing Greeves, 277 S.W.3d at 797–98).

 B. Danielle has standing to petition for custody of Daughter

 The core of Jamie’s challenge to Danielle’s standing lies in Section 210.822, which

creates a statutory presumption of paternity of children born during marriage. In pertinent part,

Section 210.822 provides as follows: “A man shall be presumed to be the natural father of a

child if: He and the child’s natural mother are or have been married to each other and the child is

born during the marriage[.]” Section 210.822.1(1) (emphasis added). There is no dispute that

Daughter was born during the marriage and is not the biological child of Danielle, who now

asserts the rights of parentage through the presumption created by Section 210.822. Jamie posits

that Section 210.822 does not apply because Danielle is not a man and the statute creates a

presumption of parentage only for men. Jamie reasons that the masculine language used in

Section 210.822 excludes Danielle from being presumed Daughter’s natural parent. Jamie then

argues that because Danielle never adopted Daughter, Danielle lacks any parental rights, and

consequently lacks standing to assert claims of custody of Daughter in dissolution proceedings

 10
before the trial court. Danielle counters that the terms “man” and “he” as used in Section

210.822 must be applied in a gender-neutral manner and afford her the presumption of parentage

created by the statute.

 Point One raises a question of statutory interpretation, which we review de novo. D.E.G.,

601 S.W.3d at 216. The primary goal of statutory interpretation is to discern the legislature’s

intent as evidenced by the text and to consider the words in their plain and ordinary meaning.

Holmes v. Steelman, 624 S.W.3d 144, 149 (Mo. banc 2021) (internal citation omitted). In

determining the meaning of words in a statute, the words should not be read in isolation but

rather “must be considered in context and sections of the statutes in pari materia, as well as

cognate sections, must be considered in order to arrive at the true meaning and scope of the

words.” Id. (quoting Cosby v. Treasurer of State, 579 S.W.3d 202, 206 (Mo. banc 2019)).

 Section 1.030 guides our interpretation of all Missouri statutes. Section 1.030 expressly

provides that “[w]hen any . . . person is described or referred to by words importing . . . the

masculine gender . . . females as well as males . . . are included.” Section 1.030.2. Our Supreme

Court has held that when the language of a statutory provision uses the masculine gender,

women are also included. See Section 1.030.2; State v. Stokely, 842 S.W.2d 77, 80 (Mo. banc

1992) (citing In re Estate of Maxey, 585 S.W.2d 326, 330 n.6 (Mo. App. S.D. 1979)). Stokely

involved a constitutional challenge to a criminal statute which used only the pronoun “he.” The

defendant in Stokely argued that the statute denied him equal protection because only men were

subject to prosecution for rape under the statute. The Supreme Court, relying on the mandate in

Section 1.030.2, held that despite the use of the pronoun “he,” the statute applied equally to the

conduct of men and women. Stokely, 842 S.W.2d at 80 (citing Maxey, 585 S.W.2d at 330 n.6).

Indeed, Section 1.030 applies to all Missouri statutes. See Section 1.030.

 11
 Jamie’s interpretation of Section 210.822 runs afoul of Section 1.030 by suggesting that

the words “he” and “man” exclude Danielle from the scope of the statute. See Stokely, 842

S.W.2d at 80 (citing Maxey, 585 S.W.2d at 330 n.6). We must read Section 210.822 in

conjunction with Section 1.030, as the legislature intended. See Section 1.030; see also Holmes,

624 S.W.3d at 149. The legislature plainly prescribes that statutes apply to men and women

equally. See Section 1.030; see also Holmes, 624 S.W.3d at 149. While same-sex marriage was

not recognized in Missouri when Section 1.030 was drafted, we are not persuaded that the

statutory status of marriage in Missouri when Section 1.030 was enacted precludes a gender-

neutral reading of Section 210.822. See Section 1.030; see also Holmes, 624 S.W.3d at 149.

 A gender-neutral reading of Section 210.822 leaves no question that Danielle is the

presumed natural parent of Daughter. We recognize that the sparse judicial authority addressing

the gender-neutral reading of Missouri statutes involves the use of the pronoun “he” in a statute,

and not the more specific term “man” that is found in Section 210.822. To the extent Jamie

suggests that the specific use of the word “man” distinguishes this case from Stokely and

requires a gender-specific interpretation and application of Section 210.822, we reject this

premise in light of the United States Supreme Court decision in Obergefell v. Hodges, 576 U.S.

644 (2015). In holding that statutes either prohibiting same-sex marriage or limiting the benefits

of marriage to same-sex couples are unconstitutional, the mandate of Obergefell requires a

gender-neutral application of Missouri statutes. Danielle posits that Section 210.822 presumes

her to be Daughter’s parent because Daughter was born during the lawful marriage of Jamie and

Danielle. We agree because the holding in Obergefell requires that Section 210.822 apply

equally to same-sex couples. See Obergefell, 576 U.S. at 644 (holding the Constitution entitles

same-sex couples to civil marriage on the same terms and conditions as opposite-sex couples);

 12
Pavan v. Smith, ––– U.S. ––––, 137 S. Ct. 2075 (2017) (per curiam) (noting Obergefell’s

commitment to providing same-sex couples “the constellation of benefits” that the States have

linked to marriage) (internal citations omitted). “[R]elevant state laws [are] unconstitutional to

the extent they treat[ ] same-sex couples differently from opposite-sex couples.” Pavan, 137 S.

Ct. at 2078 (citing Obergefell, 576 U.S. at 670).

 The longstanding statutory presumption of natural parentage of children born during a

legally recognized marriage is dispositive here. See Section 210.822. Additionally, Section

210.822 is part of the Uniform Parentage Act, which creates “a uniform method for determining

paternity which [protects] the rights of all parties involved, especially the children.” Piel v. Piel,

918 S.W.2d 373, 375 (Mo. App. E.D. 1996) (emphasis added). “It has long been the law of this

state that a child born during a marriage is legally presumed to be the husband's offspring for all

purposes[.]” Matter of Charles H. Stix Testamentary Tr. dated August 7, 1945, 480 S.W.3d 373,

377 (Mo. App. E.D. 2015) (citing Bower v. Graham, 225 S.W. 979 (Mo. 1920)). “For a man to

be presumed to be the natural father of a child under these subsections, he and the child’s natural

mother must have either been married or attempted to marry either before or after the child's

birth.” State ex rel. Div. of Child Support Enf’t v. Hill, 53 S.W.3d 137, 143 (Mo. App. W.D.

2001); see also L.A.J. v. C.T.J., 577 S.W.2d 151, 156 (Mo. App. W.D. 1979) (citing In re L., 499

S.W.2d 490, 492 (Mo. banc 1973)) (holding married spouses are “entitled to full benefit of the

ancient common law presumption that children born during wedlock are presumed to be

legitimate”).

 Section 210.822 grants married couples the privilege of assuming that the non-birthing

spouse is a natural parent, provided the child is born during their marriage. See Section 210.822.

Following the constitutional dictate of Obergefell, this presumption applies equally to non-

 13
birthing spouses in same-sex marriages or opposite-sex marriages. This presumption allows the

non-birthing spouse to avoid the process of adoption or other means of establishing parental

rights. Id. Here, the record shows the parties discussed having a child prior to marrying, and

Jamie gave birth to Daughter during the marriage. Thus, under the mandatory and unrebutted

presumption of Section 210.822, Danielle, the non-birthing spouse, is the presumed parent of

Daughter. See id; Hill, 53 S.W.3d at 143. We note that the statute offers a means to challenge

that presumption and sets forth procedural guidelines to challenge paternity. See Section

210.826. However, the record shows Jamie did not pursue a statutory challenge and did not

contest the fact that Daughter was a child born during her lawful marriage to Danielle. Jamie

now challenges the legitimacy of Daughter “in the face of the strongest presumption known to

the law” by misconstruing a statute intended to protect children like her. Morton v. Morton, 738

S.W.2d 949, 951 (Mo. App. E.D. 1987) (citing L.M.K. v. D.E.K., 685 S.W.2d 614, 616 (Mo.

App. E.D. 1985)); see Piel, 918 S.W.2d at 375.

 We hold that presumption of natural parentage created by Section 210.822 applies to

same-sex married couples. Jamie misguidedly construes the language of Section 210.822 to

deny Danielle, her ex-spouse, standing as a natural parent of Daughter. Section 1.030 mandates

that gendered language be read as gender-neutral in all Missouri statutes. See Section 1.030.

Moreover, a gender-specific application of Section 210.822 would deny Danielle a “benefit” that

is “linked to marriage” by forcing her to obtain parental rights only through the adoption process

for no reason other than having married someone of the same sex. See Obergefell, 576 U.S. at

669–70; Pavan, 137 S. Ct. at 2076. In fact, Obergefell specifically lists child custody and child

support among the benefits conferred to married couples by the states, which same-sex couples

 14
would otherwise be deprived.5 Obergefell, 576 U.S. at 669–70; see Pavan, 137 S. Ct. at 2078

(identifying “birth and death certificates” from a list of benefits, including “child custody” and

“support,” to which same-sex couples must have access). Jamie’s singular challenge to

Danielle’s standing as Daughter’s presumptive parent falters on the crumbling foundation of

denying equal rights and benefits of marriage to same-sex married couples as granted to

opposite-sex married couples. Jamie’s challenge must be rejected in light of the holdings in

Obergefell and Pavan. See Obergefell, 576 U.S. at 644; Pavan, 137 S. Ct. at 2075. We hold

Obergefell and Section 1.030 mandate that we apply Section 210.822 equally to same-sex

couples as we would to opposite-sex couples. Therefore, Danielle has standing as Daughter’s

presumptive natural parent to make claims for custody and child support. See Section 1.030;

Section 210.822; Obergefell, 576 U.S. at 644; Hill, 53 S.W.3d at 143; Stokely, 842 S.W.2d at 80.

Point One is denied.

II. Point Two—Marital Debt

 In Point Two, Jamie contends the trial court erred when dividing the marital assets by not

accounting for a loan taken by Danielle against the Plan. Specifically, Jamie reasons Danielle

violated Automatic Family Court Order Rule 68.3(2)(F) (“Local Rule 68.3”)6 by taking a loan

against a marital asset during litigation, thereby decreasing the divisible marital share.

5
 “Indeed, while the States are in general free to vary the benefits they confer on all married couples, they have
throughout our history made marriage the basis for an expanding list of governmental rights, benefits, and
responsibilities. These aspects of marital status include: taxation; inheritance and property rights; rules of intestate
succession; spousal privilege in the law of evidence; hospital access; medical decision-making authority; adoption
rights; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance
restrictions; workers’ compensation benefits; health insurance; and child custody, support, and visitation rules.”
Obergefell, 576 U.S. at 669–70.
6
 All Local Rule references refer to the 21st Judicial Circuit’s Automatic Family Court Order Rules.

 15
 A. Preservation

 We must first address whether Jamie has preserved this point for appellate review. Wells

Fargo Bank, N.A. v Smith, 392 S.W.3d 446, 452 (Mo. banc 2013). A party appealing from a

judge-tried case need not raise an argument in a post-trial motion provided the issue was

otherwise presented to the trial court during trial. Rule 78.07(b). Rule 84.04(e) requires an

appellant to include a concise statement describing how each claim of error was preserved for

appellate review. Rule 84.04(e); Lowe, 587 S.W.3d at 745; see Sanders v. City of Columbia,

602 S.W.3d 288, 297 (Mo. App. W.D. 2020) (finding Appellant did not sufficiently advise where

in the record the purported legal error was presented to the trial court because the brief stated

only, “[t]his matter was presented to the trial court”). If a claim of error was not presented for

the trial court’s review, we will not consider the issue for the first time on appeal. See 39 Bell

LLC, 584 S.W.3d at 828 (quoting Brown, 423 S.W.3d at 787).

 The record confirms that Jamie did not preserve Point Two for appellate review. Jamie

did not present the issue to the trial court in her post-trial motion to amend the judgment.

Specifically, Jamie did not raise the issue that the loan violated a local court rule. Although

Jamie was not required to raise the issue in a post-trial motion, the issue must have been raised

before the trial court to preserve the issue for appellate review. See Rule 78.07(b); Sanders, 602

S.W.3d at 297. In her brief, Jamie generally claims “[t]he errors arose in the trial court’s

judgment, and they were fully preserved for appellate review as indicated in the Legal File and

Trial Transcript.” This statement does not properly preserve the claim that the trial court’s

division of marital debt was erroneous because Jamie does not indicate where in the legal file or

transcript the alleged errors were presented to the trial court. See Sanders, 602 S.W.3d at 297.

Additionally, we reviewed the trial transcript, legal file, and post-trial motion to amend the

judgment and found no statements or objections preserving Point Two for appeal. See 39 Bell
 16
LLC, 584 S.W.3d at 828 (quoting Brown, 423 S.W.3d at 787). Because Jamie has not preserved

this issue for appeal, we deny Point Two.

III. Point Three—Legal Custody

 A. Preservation

 Point Three charges the trial court with error in awarding sole legal custody to Danielle

because the trial court’s parenting plan requires Danielle to confer with Jamie before making

certain decisions regarding Daughter. Jamie maintains the conferral requirement is consistent

only with an award of joint legal custody.

 Danielle again requests this Court to decline review of Point Three because the point is

not properly preserved for appeal. Danielle contends that Jamie’s allegations of error regarding

custody were not properly briefed or presented to the trial court. See Rule 84.04, 84.13. As

noted above, a party appealing a judgment following a bench trial need not raise an argument in

a post-trial motion to preserve that issue for appeal provided the issue was otherwise presented to

the trial court. See Rule 78.07(b); Sanders, 602 S.W.3d at 297. But an appellant is required to

include in its appellate brief a concise statement describing how each claim of error was

preserved for appellate review. Rule 84.04(e); Lowe, 587 S.W.3d at 745. We will not convict a

trial court of error for issues that were never presented to it. See 39 Bell LLC, 584 S.W.3d at

828 (quoting Brown, 423 S.W.3d at 787).

 Here, Jamie’s point on appeal does not challenge the trial court’s findings of fact

regarding the award of sole legal custody as reflected in the Judgment. Instead, Jamie challenges

the wording of the attached parenting plan, which the trial court adopted from the GAL. Jamie’s

post-trial motion alleges only that the trial court erred in awarding Danielle sole legal custody of

the parties’ child because there was minimal, if any, evidence of the parties being unable to

communicate regarding the welfare of their child. In contrast, Jamie, for the first time on appeal,

 17
alleges the trial court should have awarded joint legal custody because the conferral requirement

in the parenting plan is consistent with an award of joint, not sole, legal custody. The issue

presented by Jamie in Point Three is not the same argument raised her post-trial motion.

Additionally, our review of the record reveals that Jamie never presented the alleged

inconsistency between the parenting plan and Judgment to the trial court. Jamie raises the

inconsistency issue for the first time on appeal. Lastly, Jamie does not attempt to describe in her

brief how Point Three was preserved for review. We deny Point Three because the point has not

been properly preserved for our review. See Rule 78.07(b), 84.04(e), 84.13; 39 Bell LLC, 584

S.W.3d at 828 (quoting Brown, 423 S.W.3d at 787). Point Three is denied.

IV. Point Four—Child Support

 In her final point Jamie argues that the inclusion of Daughter’s daycare expenses in the

trial court’s Form 14 was erroneous. Jamie contends that daycare expenses are properly

categorized as “tuition” and should be excluded from the child support calculation. Danielle

counters that the cost was correctly characterized as a “work-related childcare expense” in the

trial court’s Form 14. We note Point Four was properly preserved in Jamie’s post-trial motion to

amend the judgment.

 Section 452.340 mandates the use of the Form 14 guidelines when calculating child

support. Schuman, 612 S.W.3d at 236 (quoting Edwards v. Edwards, 475 S.W.3d 218, 222 (Mo.

App. W.D. 2015)). The Form 14 guidelines require the trial court to “calculate the presumed

correct child support amount pursuant to Form 14[.]” Edwards, 475 S.W.3d at 222 (citing

Roberts v. Roberts, 391 S.W.3d 921, 922 (Mo. App. W.D. 2013)). The trial court may accept the

proposed Form 14 calculations from the parties or reject both parties’ proposed Form 14s and

prepare its own. Id. After considering all relevant circumstances, the trial court must then

determine whether the record rebuts the presumed child support amount as unjust and
 18
inappropriate. Id. at 222–23. If the trial court finds that the presumed amount of child support is

unjust and inappropriate, the court may then use its discretion to determine the proper amount of

child support. Schuman, 612 S.W.3d at 236 (quoting Richardson v. Richardson, 545 S.W.3d

895, 897 (Mo. App. E.D. 2018)).

 Jamie contends that the trial court erroneously mischaracterized the $1063 monthly

tuition at Daughter’s private Montessori pre-school as work-related childcare. We recognize that

the cost of Daughter attending the Montessori pre-school is referred to as “tuition” multiple times

in the record. We also note that Danielle testified that the monthly cost of the pre-school was the

cost of “work-related childcare.” Jamie reasons that because the word “tuition” does not appear

in the guidelines for work-related childcare expenses, but does appear elsewhere, that Daughter’s

daycare cost must be barred from consideration as a work-related childcare expense.7

 Ultimately, we find the designation irrelevant here because Jamie has presented no

evidence that tuition for a pre-school or daycare cannot be considered a work-related childcare

expense for the purposes of Form 14. See Section 452.340; Schuman, 612 S.W.3d at 236. The

trial court exercised its discretion and prepared its own Form 14 where it found the cost of

Daughter’s daycare to be a work-related childcare expense. Edwards, 475 S.W.3d at 222 (citing

Roberts, 391 S.W.3d at 922). We defer to the trial court unless firmly convinced their findings

are erroneous. Morgan, 497 S.W.3d at 363 (citing Bather, 170 S.W.3d at 492). We are not

7
 Jamie contends that the only mention of “tuition” in the Form 14 guidelines is in reference to line 6e and further
claims that fact requires any tuition paid for a private daycare can be included only as an extraordinary expense
under line 6e instead of a work-related childcare expense. The word “tuition” is not used exclusively or inclusively
in the guidelines provided for Form 14. The only mention of “tuition” comes in a list of things that may be included
in a court order when the parties request extraordinary child rearing costs, which includes “[p]ost-secondary
educational expenses and private or parochial elementary, middle and high school expenses.” We are aware of no
judicial authority treating pre-school expenses (whether labeled tuition or otherwise) as an extraordinary child
rearing cost. We also recognize the often-interchangeable use of the terms “pre-school” and “child care.” Other
than referring to Daughter’s pre-school as a Montessori school, the record does not present any suggestion that the
expense of Daughter’s pre-school amounts to an extraordinary child rearing cost.

 19
persuaded that the trial court erroneously applied the law by finding the daycare was a work-

related childcare expense. Lollar, 609 S.W.3d at 45–46 (citing Murphy, 536 S.W.2d at 32).

Point Four is denied.

 Conclusion

 The judgment of the trial court is affirmed.

 _________________________________
 KURT S. ODENWALD, Presiding Judge

Kelly C. Broniec, J., concurs.
John P. Torbitzky, J., concurs.

 20